827 So.2d 578 (2002)
Victoria T. GIRARD
v.
COURTYARD BY MARRIOTT and Zurich-American Ins. Co.
No. 02-0105.
Court of Appeal of Louisiana, Third Circuit.
October 2, 2002.
*579 Peter C. Piccione, Sr., Lafayette, LA, for Plaintiff/Appellee, Victoria T. Girard.
Janice Bertucci Unland, Rabalais, Unland & Lorio, Covington, LA, John Joseph Rabalais, Rabalais, Unland & Lorio, Covington, LA, for Defendants/Appellants, Zurich-American Ins. Co. and Courtyard By Marriott.
Court composed of SYLVIA R. COOKS, GLENN B. GREMILLION, and ELIZABETH A. PICKETT, Judges.
GLENN B. GREMILLION, Judge.
In these consolidated cases, the plaintiff, Victoria Girard, appeals the workers' compensation judge's grant of summary judgment in favor of the defendant, Courtyard by Marriott, based on a finding that she made fraudulent statements in an effort to obtain workers' compensation benefits. We affirm.

FACTS
On April 5, 2000, Girard suffered a work-related accident while employed as a laundry worker for Courtyard. She was pulling a bin filled with water and sheets when she tripped over an electrical cord and fell backwards hitting her head on the concrete floor. She sought immediate treatment from the Lafayette General Medical Center Emergency Room and then subsequent treatment from Dr. Thomas Montgomery, an orthopedic surgeon. Dr. Montgomery sought further consultation with Dr. Stephen Snatic, a neurologist, and Dr. Wayne Lindemann, *580 for pain management. Dr. Snatic also recommended she see Dr. Joseph Gillespie, for pain management. Girard complained of severe pain in her neck, headaches, and lower back pain, although diagnostic testing revealed nothing to explain her pain. Girard has not returned to work since her accident. Courtyard terminated her workers' compensation benefits on September 9, 2000.
On November 13, 2000, Zurich U.S., Courtyard's workers' compensation insurer, filed a disputed claim for compensation questioning Girard's claims of continued disability and the need for additional medical treatment. In response to this petition, Girard filed a disputed claim for compensation on December 13, 2000, seeking penalties and attorney's fees due to Courtyard's arbitrary and capricious actions in refusing to provide her with adequate medical treatment and for terminating her weekly compensation benefits on September 9, 2000. These two matters were consolidated for trial purposes.
In a reconventional demand, Courtyard alleged that Girard had forfeited her entitlement to workers' compensation benefits based on her fraudulent representations concerning her condition. La.R.S. 23:1208. Courtyard based its claim on video surveillance of Girard showing her performing acts which she had previously testified under oath that she was incapable of doing. Courtyard also filed a motion for summary judgment based on the same allegations of fraud on the part of Girard. Following a hearing on the motion, the workers' compensation judge issued judgment in favor of Courtyard finding fraud on the part of Girard and further forfeiting her entitlement to workers' compensation benefits pursuant to La.R.S. 23:1208. The workers' compensation judge dismissed her claim against Courtyard with prejudice. This appeal by Girard followed.

ISSUES
On appeal, Girard raises three assignments of error. In her first assignment of error, she claims that Courtyard has filed a motion to dismiss her appeal for being untimely. In her other assignments of error, she argues that the workers' compensation judge erred in granting the motion for summary judgment instead of finding that it was an improper use of summary proceedings, by not referring the matter to the merits, and in finding that Courtyard proved its allegations of fraud.

MOTION TO DISMISS
Upon review, we need not address this assignment of error, as this matter has already been decided in Girard v. Courtyard By Marriott, 02-105 (La.App. 3 Cir. 3/27/02), 813 So.2d 595. Since we have already held that this appeal was timely, this issue has been rendered moot.

SUMMARY JUDGMENT
The law with regard to the appellate review of summary judgment is well settled. Magnon v. Collins, 98-2822 (La.7/7/99), 739 So.2d 191. Accordingly, we will conduct a de novo review of this matter to determine whether the workers' compensation judge correctly granted summary judgment in favor of Courtyard.

LA.R.S. 23:1208
Pursuant to La.R.S. 23:1208(A), "It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation." Any employee making fraudulent misrepresentations concerning their condition forfeits his/her right to receive workers' compensation benefits. La.R.S. 23:1208(E).

*581 A forfeiture of workers' compensation benefits under La.R.S. 23:1208 requires a willful misrepresentation made for the purpose of obtaining workers' compensation benefits. When requesting summary judgment, the mover must provide sufficient, supporting, conclusive evidence. Then, the mover must set forth specific facts, showing that there is a genuine issue of material fact in dispute for trial.
Bibins v. St. Francis Cabrini Hosp., 00-133, p. 1 (La.App. 3 Cir. 6/7/00), 768 So.2d 102, 103, writ denied, 00-3015 (La.12/15/00), 777 So.2d 1235.
In support of its claim of fraud, Courtyard introduced Girard's deposition, the medical records of the four doctors evaluating her, and a video tape containing surveillance of her on several different occasions.
In her deposition, Girard complained of suffering daily headaches, back pain, and numbness and weakness in her left shoulder and arm. She stated that she is unable to move her neck backwards and forwards or from side to side without pain. She also complained of becoming lightheaded once or twice a day, seeing spots, and occasionally falling down. Girard stated that she can only stand for approximately twenty minutes at a time and that she is unable to walk upstairs, bend over and tie her shoes, or pick anything up due to her lower back. She testified that she does not have any strength in her left arm and is unable to lift a gallon of milk with her left hand. She stated that she is able to hold things with her left hand for only a short while before having to grab them with her right hand. She further testified that she cannot lift her left arm higher than her shoulder.
Girard testified that her typical day consists of doing exercises for her left hand and attempting to walk ten minutes in the evening as recommended by her doctor. She stated that she stays home all day, but will occasionally accompany her husband to the grocery store and, while there, ride around in an electric cart provided by the store. She testified that she is unable to perform any housework, shop for groceries, or lift grocery bags, but she can do some cooking. She stated that she tries to walk from her apartment to the mailbox located at the road in front of her apartment, but that she usually is unable to walk that far. Girard stated that she is unable to sleep at night and that she usually falls asleep at around 5:30 to 6:00 in the morning, after which she sleeps for four to five hours a day. She stated that she has followed this routine for a couple of months. Prior to her accident, Girard testified that she would run, ride a bike, walk, play ball with her kids, and skate. She testified that she is unable to do any of these things since her accident.
Dr. Montgomery evaluated Girard on four different occasions beginning on April 10, 2000, five days after the accident. She complained of excruciating pain in her neck and had exquisite tenderness to light palpation of her neck. In three of her examinations, Dr. Montgomery noted that Girard would not move her neck. His impression was that she was suffering from a cervical strain and, since a CT scan revealed no obvious abnormalities, he assumed that her symptoms were soft tissue related.
Dr. Snatic evaluated Girard at the recommendation of Dr. Montgomery. Girard complained of suffering from disabling daily headaches, severe pain in her neck, and problems with her vision due to her fall. During all three examinations, he noted that Girard kept her neck rock hard and would not allow any movement of it. An MRI of her cervical spine failed to reveal anything to explain the severe pain and *582 limited movement in her neck. After her final visit, Dr. Snatic did not feel that Girard was suffering from a neurological problem associated with objective neurological signs. In his report to Dr. Montgomery, he stated:
The physician-patient relationship is one that is cemented in trust. Because of the findings that suggest functional overlay, I am not trustworthy of her ability to honestly report symptomatology and to honestly report response to treatment. This puts me in the precarious position of having no way to rationally function as her physician. In addition, since I have discussed these findings with her, I am sure that she has lost confidence in me.
Dr. Lindemann examined Girard on June 28, 2000. He noted that she was very tender in the left posterior shoulder and neck, and that she jumped at any palpation of her posterior neck. He further noted that she refused to cooperate with evaluation of the range of motion of her neck due to complaints of pain. Girard also had slight difficulty raising her left arm due to pain in her left posterior shoulder. Dr. Lindemann found no focal abnormalities or points of tenderness in her lower back, her range of motion limited to twenty-five percent of normal, and her straight leg raise test negative. He recommended an MRI of her cervical spine and left shoulder, trigger point injections, and continuation of physical therapy and medication. If the MRI was negative, then he recommended she undergo a functional capacity evaluation.
Dr. Gillespie evaluated Girard on August 22, 2000. She complained of moderate to unbearable constant pain in her neck and aching and tenderness in both her neck and left shoulder. After examining her, his impression was that she was suffering from cervical myofascial pain. He found that the point of maximal intensity was at the cervical interspinous ligament, near its attachment to the occipital skull. Dr. Gillespie suggested that she undergo a series of diagnostic trigger point injections, but Girard refused these, instead requesting more medication.
A review of the video surveillance tape shows Girard on six different dates in February 2001. The tape clearly refutes many of her representations concerning her condition and her limitations following her April 5, 2000, work-related accident. Girard is shown moving her neck freely from side to side and forwards and backwards without any apparent signs of pain. She is shown standing and walking for periods of time without assistance, and bending forward and raising her right foot off the ground in order to adjust her shoe. She is also shown easily bending down while sitting in a very low chair. She is shown walking unassisted to and from a convenience store and carrying a bag of items interchangeably in both her left and right hands without any sign of problems. The convenience store is located past the mailboxes located outside Girard's apartment complex, thus, she is shown easily walking to the mailboxes and past them. She is also able to carry her large purse in either hand.
In opposition to the motion for summary judgment, Girard introduced her own affidavit, and that of her aunt, a neighbor, and her son. In her affidavit, Girard states that she suffered excruciating pain while giving her deposition in February 2001. She further states that walking in grocery stores causes her a great deal of pain and that she usually rides in an electric cart while shopping. She stated that she cannot walk very far, and that she needs assistance while walking in case she falls. She stated that she has passed out three or four different times since her accident, *583 due to weakness, pain, and nausea, and that she has either visited the emergency room or been hospitalized eight to ten times since her accident. She stated that she has received help from her son, her aunt, and a neighbor due to her inability to function as a result of pain from her injuries.
Dolphine Girouard, Girard's aunt, stated that Girard was involved in a work-related accident and that she suffers from pain as a result of her injuries. She stated that Girard is unable to perform housework and she cannot walk very far or use her left arm at times due to pain. She further stated that she would walk with Girard in case she would fall. Girouard also stated that she has provided Girard transportation to her doctor's visits and to the hospital on several occasions in order to receive treatment for her injuries. She further stated that she has stayed with Girard when she was not feeling well due to pain.
Latarsha Carter, Girard's neighbor and a LPN, stated that she has helped Girard with her medications, cared for her children while she was hospitalized or not feeling well, and provided her with transportation to her doctor's visits or to the hospital. She stated that she observed Girard having trouble and suffering from pain when using her left arm.
Joey Girouard, Girard's son, stated that his mother was injured in a work-related accident, and that she has received treatment from several doctors and has been hospitalized several times for treatment as a result of her injuries. He stated that Girard is unable to work or perform housework as a result of pain. Since the accident, he stated that he assists her with cooking and cleaning and that he walks with her when she tries to exercise in case she falls. He further stated that Girard has trouble using her left arm and that she drops things while attempting to pick them up with her left hand. Finally, he stated that she suffers from severe pain as a result of her accident and sometimes she can only sit or lie down due to her pain. After reviewing the above stated evidence and the video surveillance tape, we find that Courtyard has presented conclusive evidence of Girard's misrepresentations concerning her condition after her April 5, 2000, work-related fall. In her deposition and her affidavit, Girard clearly made representations concerning her inability to move her neck, walk without assistance, and perform actions with her left arm and hand. However, the video tape clearly shows that these representations were false.
Like the workers' compensation judge, we can reach no other conclusion than that Girard made these representations for the express purpose of receiving workers' compensation benefits. We are not persuaded by the affidavits introduced by Girard in support of her opposition to the motion for summary judgment that a reasonable factfinder would arrive at a contrary conclusion. Accordingly, we find that she willfully made representations for the purpose of obtaining workers' compensation benefits, in violation of La.R.S. 23:1208. The judgment of the workers' compensation judge finding fraud on the part of Girard and that she has forfeited her right to receive such benefits is affirmed. We find no merit in Girard's assignment of error, nor in her argument that the workers' compensation judge should have referred this matter to the merit or found that it was an improper use of summary proceedings.

CONCLUSION
For the foregoing reasons, the judgment of the workers' compensation judge granting summary judgment in favor of the defendant, Courtyard by Marriott, and dismissing *584 Girard's claim against it with prejudice is affirmed. The costs of this matter are assessed to the plaintiff-appellant, Victoria Girard.
AFFIRMED.