940 So.2d 83 (2006)
Charline FRANKLIN, Plaintiff-Appellant
v.
HEALTHSOUTH, Defendant-Appellee.
No. 41,458-WCA.
Court of Appeal of Louisiana, Second Circuit.
September 20, 2006.
*84 Williams Family Law Firm, L.L.C., by Joe Payne Williams, for Appellant.
Rabalais, Unland & Lorio, by John J. Rabalais, Janice B. Unland, Robert T. Lorio, Covington, Brad O. Price, for Appellee.
Before STEWART, PEATROSS and MOORE, JJ.
MOORE, J.
Charline Franklin appeals a judgment finding that she forfeited all workers' compensation benefits for making false representations to obtain any benefit or payment in violation of La. R.S. 23:1208. We affirm.

Factual Background
Ms. Franklin was employed as a certified nurses' assistant ("CNA") at HealthSouth, a nursing home in Homer, Louisiana. Her average weekly wage was $349. In March 2004, she was working the graveyard shift, 6 p.m.-6 a.m. She described her duties as bathing, changing, turning, and generally keeping an eye on 17 or 18 patients overnight.
At trial, Ms. Franklin gave the following account of her injury. On the evening of March 25, 2004, she was turning over an uncooperative patient when suddenly her left ear "popped" and she lost her hearing (momentarily) in both ears. She promptly reported this to the duty nurse, Christy McNiel, and soon her neck started to hurt "real bad." The LPN on duty, Marcy Smith, gave her an Ibuprofen, and Ms. Franklin went home; it was the last night *85 she worked as a CNA. Three days later, March 28, she went to Homer Memorial Hospital, telling ER personnel that she hurt her back and her whole neck was hurting.
In the ensuing weeks, Ms. Franklin saw several physicians, including her family doctor, Dr. Scott Haynes, and a nurse, Denise Butler, at Claiborne Family Medical Clinic; Dr. Haynes referred her to an orthopedist, Dr. Edward Anglin, at Highland Clinic in Shreveport, and later to a "spinal interventionalist," Dr. William Whyte. On April 7, Dr. Haynes gave her a two-week work release, and she went to physical therapy. However, she continued to report pain in the neck and shoulders and would not return to work.
In July 2004, Dr. Whyte recommended nucleoplasty of the neck, which Ms. Franklin testified she was willing to undergo, as "nothing else has worked." In August 2004, she underwent an independent medical exam ("IME") from Dr. Bilderbeck at The Orthopedic Clinic in Shreveport; he felt she could work lifting 20 lbs. or less. Dr. Anglin later approved her to work lifting 10 lbs. or less 66% of the day. HealthSouth offered her a light-duty position, unit secretary, which she accepted on March 1, 2005, at her old rate of pay. At trial in August 2005, Ms. Franklin was still complaining of pain in her neck and across her shoulders, with weakness in her arms; of being unable to lift things; and of taking Lortab daily, on a prescription from Dr. Haynes.
HealthSouth presented a different version of Ms. Franklin's history. Its human resources director, Tonya Duggan, testified that Ms. Franklin did not orally report the incident until April 1, several days after it allegedly occurred, and did not fill out a written report of injury until April 13. Ms. Duggan phoned Ms. Franklin twice in early April, offering her light-duty work, but Ms. Franklin replied she had a doctor's excuse and could not work. HealthSouth forwarded the claim to ESIS, its third-party administrator, in mid-April; ESIS's claims adjuster, Mary Garcia, interviewed Ms. Franklin by phone on May 9. Ms. Franklin again insisted that she could not work and, in response to a specific question, denied that she had "a second job of any kind." HealthSouth issued her two weekly indemnity payments covering April 7-20, 2004.
On May 11, however, Ms. Duggan learned that a new restaurant called "Charline's Soul Food" had opened in Homer, and that Ms. Franklin was running it. Ms. Duggan relayed this information to Ms. Garcia, who suspected fraud and authorized a surveillance video. The video, taken on May 14 and 19, showed Ms. Franklin carrying pots of prepared food from house to car and then into the restaurant, where she performed light work such as running the cash register and handing to-go cups of iced tea to customers. It also showed her lifting her grandson by one arm and reaching across the roof of a car to pick up something.
HealthSouth further learned that in September 2003, Ms. Franklin had obtained an occupational license to run Charline's Soul Food in a vacant building on Hwy. 79 in Homer; in mid-February, about one month before the alleged injury, the Department of Health and Hospitals had notified her of site modifications that would be needed before she could serve food there. Ms. Franklin and various family members apparently completed the necessary work; on May 7, the location passed health inspection and they opened the restaurant. Notably, this was shortly before Ms. Franklin told Ms. Garcia that she had no second job of any kind.
HealthSouth contended that Ms. Franklin was not injured at work on March 25, *86 2004, but instead claimed an accident so she could get time off to fix up the building and run her diner. In addition to the facts outlined above, it showed that Ms. Franklin's written injury report described right-sided neck pain, while the ER report at Homer Memorial noted left-sided neck pain for the "past 2 to 3 daysno trauma." HealthSouth also urged that Ms. Franklin committed fraud by telling Ms. Garcia on May 9 that she had no second job, when in fact she was running a restaurant with her family.
The economics were not right for a lunch spot in Homer and Charline's Soul Food closed in a mere three weeks. When Ms. Franklin submitted her Form 1020 for the month of May, she reported earning a net total of $70 from the venture.

Trial Testimony and Action of WCJ
Ms. Franklin filed the instant disputed claim in July 2004. She demanded TTD benefits for March 26April 6 and April 20-30, 2004, times she claimed to be under Dr. Anglin's work release; SEB for May 1, 2004March 1, 2005; authorization for the surgery suggested by Dr. Whyte; and penalties and attorney fees for HealthSouth's failure to pay these benefits. HealthSouth contended that there was no work-related accident and that Ms. Franklin forfeited all benefits by making false representations to obtain any benefit or payment.
At trial, Ms. Franklin testified that the accident occurred as described above, and that she immediately reported it to her coworkers; however, she did not call any of these coworkers to testify, and admitted she did not file her written report until April 13. She also testified that she reported an accident to the doctor in the ER, but could not explain why that record said "no trauma." She admitted telling physicians, alternatively, that her neck and shoulder pain was mainly on the right or left side; she insisted that it really just hurt all over. She generally remembered talking to Ms. Duggan and Ms. Garcia in the weeks after the accident, but she could not recall any specifics of these conversations. She admitted telling Ms. Garcia on May 9 that she had no other job at the time.
Ms. Franklin also testified that although the restaurant bore her name, it was a family business that she, her mother, two sisters and daughter had been discussing for a long time. Her intent was for the whole family to run it, and for her to work when she was not on duty at HealthSouth. After the accident, however, her family decided to move ahead with the plan in order to get some cash flow for Ms. Franklin. She testified that she either did "nothing" at the restaurant, or perhaps just made change or handed iced tea to customers, but maintained that others did all the cooking, cleaning and heavy work. She admitted that she occasionally "forgot" about her lifting restriction and picked up her 30-lb. grandson anyway. Ms. Franklin's mother and two sisters also testified, generally corroborating that they, and not Ms. Franklin, did the heavy work at the restaurant.
HealthSouth presented the deposition testimony of Ms. Franklin, Ms. Garcia, Ms. Duggan and Dr. Anglin; records from Ms. Franklin's healthcare providers and from the Department of Health regarding the restaurant; and the 42-minute surveillance video.
The WCJ rendered oral reasons for judgment in December 2005. After outlining the criteria for forfeiture under La. R.S. 23:1208 and Resweber v. Haroil Const. Co., 94-2708 (La.9/5/95), 660 So.2d 7, the WCJ found the statements of Ms. Franklin and her family "neither inadvertent nor inconsequential." She found Ms. Franklin deliberately lied about the extent *87 of her disability, the extent of the work she performed at the restaurant, and her ability to engage in lifting, bending and stretching. The WCJ specifically cited the videotape, which "clearly contradicts Ms. Franklin's testimony about her ability to engage in activities which she alleged would have caused her neck to hurt." Finding a forfeiture, the WCJ did not address the claims for additional benefits, penalties and attorney fees.
Ms. Franklin has appealed, raising five assignments of error.

Applicable Law
As they pertain to this case, the forfeiture provisions of the anti-fraud statute are as follows:
§ 1208. Misrepresentations concerning benefit payments; penalty
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
* * *
E. Any employee violating this Section shall, upon determination by the workers' compensation judge, forfeit any right to compensation benefits under this Chapter.
The only requirements for forfeiture of benefits under § 1208 are that (1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment. Resweber v. Haroil Const. Co., supra; Johnikin v. Jong's Inc., 40,116 (La.App. 2 Cir. 9/21/05), 911 So.2d 413, writ denied, 2005-2251 (La.2/17/06), 924 So.2d 1020. There is no requirement that the employer be prejudiced by the misrepresentation. Resweber v. Haroil Const. Co., supra. Benefits are forfeited for the sole reason that the claimant willfully and deliberately tried to defraud the system. Morton v. Wal-Mart Stores Inc., 36,398 (La.App. 2 Cir. 10/25/02), 830 So.2d 533, writ denied, 2002-2814 (La.2/7/03), 836 So.2d 101.
Forfeiture is a harsh remedy and must be strictly construed. Wise v. J.E. Merit Constructors Inc., 97-0684 (La.1/21/98), 707 So.2d 1214; Johnikin v. Jong's Inc., supra. Nevertheless, the WCJ's decision to impose or deny forfeiture under § 1208 is a factual finding which will not be disturbed on appeal absent manifest error. Johnikin v. Jong's Inc., supra; Graham v. McKinney Nissan, 39,656 (La.App. 2 Cir. 6/26/05), 907 So.2d 213.
The determination of whether certain pictures or videotapes are admissible is largely within the discretion of the trial court. Olivier v. LeJeune, 95-0053 (La.2/28/96), 668 So.2d 347. Evidence in the form of moving pictures or videotapes is approached with great caution as they show only intervals of the activities of the subject, they do not show rest periods, and they do not reflect whether the subject was suffering pain during or after the activity. Orgeron v. Tri State Road Boring Inc., 434 So.2d 65 (La.1983); Howard v. Holyfield Const. Inc., 36,734 (La.App. 2 Cir. 3/18/03), 839 So.2d 1277, writ denied, XXXX-XXXX (La.6/6/03), 845 So.2d 1097. Surveillance videotape may form the basis of a forfeiture under § 1208 if it directly contradicts the claimant's statements. See, e.g., Girard v. Courtyard by Marriott, 02-0105 (La.App. 3 Cir. 10/2/02), 827 So.2d 578; Clark v. Diamond B. Construction, 2000-2146 (La.App. 1 Cir. 12/28/01), 803 So.2d 1113.

Discussion
By her first assignment of error, Ms. Franklin urges the WCJ erred in finding *88 that she forfeited any right to workers' compensation benefits for violating the provisions of R.S. 23:1208. She contends that the only specific incident cited in the reasons for judgment was the portion of the videotape in which she helped her grandson from the front seat to the back seat of the car, and this lasted only four seconds, or 0.15% of the entire video. The rest of the video, she submits, shows her engaged in activities clearly within her restrictions, such as handing a to-go box to a customer, placing cups on the counter and taking payment from a customer. She argues that videotape evidence must be approached with great caution. Orgeron v. Tri State Road Boring Inc., supra; Howard v. Holyfield Const., supra. She adds that a mere inconsistency between the claimant's testimony and a videotape will not prove fraud; the statements must be willful and deliberate. Molinere v. Vinson Guard Service Inc., XXXX-XXXX (La. App.7/13/05), 914 So.2d 566. She concludes with the rule that forfeiture under § 1208 must be strictly construed. Wise v. J.E. Merit Constructors, supra.
HealthSouth responds that the WCJ's interpretation of the videotape is not plainly wrong, and Ms. Franklin made willful misrepresentations "on multiple, material issues surrounding the claims she presented in this case." It cites her false statements to Ms. Duggan, Ms. Garcia and various treating physicians, all of which were exposed at trial and informed the WCJ's decision. Most importantly, her "multiple denials of any work activities whatsoever" were totally undermined by the activities shown in the videotape. HealthSouth cites recent cases in which candid videotapes formed the basis of forfeiture judgments. Girard v. Courtyard by Marriott, supra; Clark v. Diamond B. Construction, supra; Meyer v. Carr Stone & Tile Co., XXXX-XXXX (La.App. 4 Cir. 3/13/02), 813 So.2d 529; Our Lady of the Lake Regional Med. Ctr. v. Helms, 98-1931 (La.App. 1 Cir. 9/24/99), 754 So.2d 1049, writ denied, 99-3057 (La.1/7/00), 752 So.2d 863. It distinguishes this court's opinion in Howard v. Holyfield Construction, supra, on the ground that the video did not directly contradict Howard's prior statements. It concludes that the record fully supports the finding of forfeiture.
Under § 1208 and Resweber v. Haroil Const. Co., supra, HealthSouth was required to show three things. First, it had to show that Ms. Franklin made a false statement or representation. It proved that she made certain statements to Ms. Duggan and Ms. Garcia, and then offered the surveillance videotape to refute those statements. The videotape does not dramatically depict a claimant engaged in vigorous physical activity clearly beyond her claimed medical restrictions. However, it shows her performing mild to moderate activity shortly after she told Ms. Duggan that she had a doctor's excuse and simply could not work. More importantly, it shows her working at Charline's Soul Food only days after telling Ms. Garcia that she had no second job whatsoever. This was a direct contradiction. The failure to disclose a second job will support a finding of forfeiture under § 1208. Tuminello v. Girling Health Care Inc., 98-977 (La.App. 5 Cir. 1/26/99), 731 So.2d 316. The record supports the WCJ's finding that Ms. Franklin made false statements to Ms. Duggan and Ms. Garcia.
Second, HealthSouth had to show that the statements were willful, not merely inadvertent. The record plainly shows that the Department of Health conducted a feasibility inspection for food service in February 2004 and advised Ms. Franklin of site modifications to comply with the sanitary code; on May 7, she applied for a permit to operate, and was open for three weeks in May. It is inconceivable that the plan to renovate the building and run a restaurant there could have been far from *89 Ms. Franklin's mind at the time of any of her statements. The record amply supports the WCJ's finding that the statements were willful.
Finally, HealthSouth had to show that the statements were made for the purpose of obtaining any benefit or payment. At trial, there was a factual issue as to whether Ms. Franklin reported her accident right after it happened or later.[1] Regardless of this discrepancy, it is undisputed that Ms. Franklin did not submit her written report until April 13; because of this delay, she did not receive her first weekly indemnity check until April 30, for the week of April 14-20. In other words, she was in need of a cash flow when she made statements to Ms. Duggan in mid-April and to Ms. Garcia on May 9. At trial, she admitted deciding to open the restaurant after her accident because she needed the income. This evidence supports the WCJ's finding that Ms. Franklin gave statements to Ms. Duggan and Ms. Garcia for the purpose of obtaining compensation benefits.
In sum, we detect no manifest error in the WCJ's finding of a forfeiture under § 1208. In light of this conclusion, we pretermit any consideration of Ms. Franklin's remaining assignments of error.

Conclusion
For the reasons expressed, the judgment is affirmed. Ms. Franklin is to pay all trial and appellate costs.
AFFIRMED.
NOTES
[1] Ms. Franklin testified that she promptly reported the injury to the duty nurse, Christy McNiel, and to the LPN on duty, Marcy Smith, who gave her an Ibuprofen for pain; however, she did not call either of these witnesses to corroborate the claim. The "Incident Report" signed by Nurse McNiel is dated March 25, 2004 at 10 p.m., but Ms. Duggan testified that this document was in error and that Nurse McNiel was disciplined for backdating the report. Ms. Duggan testified that Ms. McNiel did not notify her about the incident until March 29.