STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

06-1441

DUDLEY COURVILLE

VERSUS

SCI LOUISIANA FUNERAL SERVICE

**********
APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 2
PARISH OF RAPIDES, NO. 04-09109
JASON OURSO, WORKERS' COMPENSATION JUDGE
**********

GLENN B. GREMILLION
JUDGE

**********

Court composed of John D. Saunders, Glenn B. Gremillion, and J. David Painter, Judges.

REVERSED; RENDERED;
AND REMANDED.

M. Terrance Hoychick
Hoychick & Aguillard, L.L.P.
P. O. Drawer 391
Eunice, LA 70535-0391
(337) 457-9331
Counsel for Plaintiff/Appellant:
	Dudley Courville

Roger A. Javier
Donovan J. O'Pry, II
Jeansonne & Remondet, L.L.C.
P. O. Box 91530
Lafayette, LA 70509-1530
(337) 237-4370
Counsel for Defendant/Appellee:
	SCI Louisiana Funeral Service

GREMILLION, Judge.

The plaintiff, Dudley Courville, appeals from the workers' compensation judge's judgment denying his motion for summary judgment and in finding that he violated La.R.S. 23:1208 by misrepresenting that he was unable to perform the type of work entailed by his position with the defendant, SCI Louisiana Funeral Service. For the following reasons, we reverse, render, and remand.

**FACTS**

Courville was employed by SCI to perform handyman services and yard maintenance at its various funeral homes. In July or August, 2001, he suffered a work-related injury to his right knee while moving a compressor at Ardoin's Funeral Home in Eunice, Louisiana. As a result, he first underwent arthroscopic surgery on his right knee and then a total knee replacement. Thereafter, he began experiencing pain in his right lower back and extremity. A 2004 MRI revealed advanced spinal stenosis at L4-5 and moderate osteoarthritis of the facets at L5-S1, along with a bulging disc. Courville was released to light duty work on January 5, 2004, which he performed until SCI terminated that position on March 2, 2004. At that point, it placed him on a no-work status and indicated it would adjust his indemnity benefits to reflect this status. However, his indemnity benefits were never reinstated.

Courville filed the present disputed claim for compensation against SCI alleging its failure to reinstate his benefits. SCI answered and alleged that Courville forfeited his right to benefits pursuant to a violation of La.R.S. 23:1208 or 1208.1, which it reiterated in a reconventional demand. Courville then filed an amended disputed claim for compensation alleging that SCI arbitrarily refused to provide

1

medical care, pay indemnity benefits, and made false statements designed to deny him benefits in violation of La.R.S. 23:1208. Thereafter, both parties pursued judgments via motions for summary judgment. Following a hearing, the workers' compensation judge granted summary judgment in favor of SCI finding that Courville violated La.R.S. 23:1208 and forfeited his right to workers' compensation benefits. Courville's motion was denied, and his claims against SCI were dismissed with prejudice. This appeal followed.

## ISSUES

On appeal, Courville raises five assignments of error committed by the workers' compensation judge. He argues that the workers' compensation judge was legally incorrect in granting summary judgment in favor of SCI, and in finding that his statements were willfully made in order to obtain indemnity benefits. He further argues that the workers' compensation judge erred in refusing to consider his claims that arose prior to the alleged fraudulent statements and in failing to grant summary judgment in his favor. Finally, he argues that the workers' compensation judge erred in refusing to consider the fraudulent statements made by SCI.

## SUMMARY JUDGMENT

The standard applied by appellate courts in reviewing a lower court's grant of summary judgment is well settled. Accordingly, we will undertake a de novo review of the record in order to determine the correctness of the workers' compensation judge's findings.

## FRAUDULENT STATEMENTS

In his first two assignments of error, Courville argues that the workers'

2

compensation judge legally erred in granting summary judgment in favor of SCI. He points out that the workers' compensation judge considered the merits of the matter, made credibility determinations, and weighed the evidence in order to reach his determination.

Louisiana Revised Statutes 23:1208(A) provides that it is "unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation." Any employee violating this statute forfeits all of their rights to workers' compensation benefits. La.R.S. 23:1208(E).

This very issue was addressed by us in the recent case of *Hitchcock v. Heritage Manor Nursing Home*, 05-1010 (La.App. 3 Cir. 2/1/06), 922 So.2d 764. There we stated:

> In this motion for summary judgment, the burden is on HMNH to show that Hitchcock violated La.R.S. 23:1208 by willfully making one or more false statements for the purpose of obtaining workers' compensation benefits. *Weingartner [v. Louisiana IceGators*, 02-1181 (La.App. 3 Cir. 4/17/03)], 854 So.2d 898 [, *writ denied*, 03-1388 (La. 9/13/03), 853 So.2d 645]. Additionally, a determination of whether a party has violated La.R.S. 23:1208 turns on an evaluation of the party's motive or intent in making the contested representations.
>
> > Summary judgment is seldom appropriate for determinations based on subjective facts, such as motive, intent, good faith, knowledge and malice. *Penalber [v. Blount]*, 550 So.2d [577 (La.1989)]. As we put it in *Penalber*, summary judgment "is *rarely* appropriate for a determination based on subjective facts." 550 So.2d at 583 (emphasis supplied).
>
> *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 23 (La.7/5/94), 639 So.2d 730, 751 (footnote omitted).

*Id.* at 766-67 (alteration in part in the original).

3

In this instance, SCI bases its claim of fraud on an August 15, 2004 surveillance video and on Courville's July 26, 2005 deposition testimony. The nineteen minute video clip shows Courville using lopper shears and a small hand saw to trim the branches from a small tree which had been cut down. In his deposition, Courville was asked if he could perform yard work, including trimming branches, following his accident. In reply, he stated that he had cut his yard approximately three times since the accident, but had not trimmed any branches as his is unable to climb a ladder. He stated that he can mow his yard, but said that he pays the price later with pain in his lower back down to his right big toe. When asked if he could return to work, Courville testified that he felt that he was unable to return either to full-time or part-time work due to severe constant pain. He specifically said that he did not feel capable of performing a landscaping or manual labor position as he did not think he could perform such a job properly.

Dr. Thomas Montgomery, Courville's treating orthopaedic surgeon, testified that he released Courville to light duty work on January 5, 2004, following his total knee replacement. He stated that Courville was restricted from lifting in excess of twenty pounds, but could lift ten pounds frequently. He said that Courville was further limited in bending, kneeling, squatting, and sitting, as well as in the use of his right lower extremity. Dr. Montgomery opined that it would not be unreasonable for Courville to occasionally perform gardening and yard work, such as raking, trimming, and shovel work. He further testified that it was not uncommon for a person restricted to light duty to exceed those restrictions for a short period of time before resuming them. He stated, "I think everybody does that."

4

In finding that Courville forfeited his right to workers' compensation benefits, the workers' compensation judge stated in his oral reasons:

> Well, the court is aware of the Third Circuit's opinions dealing with summary judgment, but the court finds this case is a little bit different. The Court finds that in this case, this claimant – his job encompassed maintenance type work, yard work, things like that. The Court finds that the claimant was attending doctor's visits indicating that he basically was not able to do any type of work and within just a short time period to the video the claimant was taken off all work completely. The video was taken on August 14, 2004, which clearly shows the claimant moving around very easily doing yard work, the same type of work he normally would do on the job. In his deposition thereafter it's clear to the court that he lied concerning the type of work he had been doing. He tried to put it all off on I think his son, named Jacob, as doing all the yard work. He testified he didn't do any type of yard, didn't do any type of clipping, no type of work with trees or anything like that since the accident.
>
> The Court finds that the defendants have met their burden of proof in proving a 1208 violation and the summary judgment is granted. The case is dismissed with prejudice. The summary judgment of claimant is now moot.

After reviewing the evidence, we find that the workers' compensation judge clearly considered the merits of this matter and reached his decision based on a credibility determination. He found that Courville lied about trimming trees, a duty which encompasses only part of his position with SCI. However, Dr. Montgomery stated that Courville was released to light duty work on January 5, 2004, and could occasionally perform this task. Furthermore, Courville was performing light duty work for SCI up until March 2, 2004, when it stated that it could no longer provide him light duty work as requested by Dr. Montgomery. In its letter, SCI stated that it would adjust his status as of that date to place him back on a no-work status.

SCI directs us to our opinion in *Girard v. Courtyard by Mariott*, 02-0105 (La.App. 3 Cir. 10/2/02), 827 So.2d 578, and argues that the instant case and that case

are similar and that *Girard* should guide us to affirm the workers' compensation judge's decision. The contrary is true. In *Girard*, the evidence presented by the video clearly contradicted the employee's claim. Such is not the case here. In *Girard*, a credibility determination was not necessary, while in this instance it is.

Accordingly, we find that a genuine issue of material fact remains with regard to whether Courville made his statements willfully for the purpose of obtaining workers' compensation benefits. The judgment of the workers' compensation judge is reversed and the matter is remanded for further proceedings.

## BENEFITS

In his third assignment of error, Courville argues that the workers' compensation judge erred in finding that his ruling with regard to the alleged fraudulent statements by him rendered his claim for benefits moot. He argues that this issue has been squarely addressed by us in *Jim Walter Homes, Inc. v. Guilbeau*, 05-1473 (La.App. 3 Cir. 6/21/06), 934 So.2d 239, and *Apeck Construction Inc., v. Bowers*, 03-486 (La.App. 3 Cir. 12/10/03), 862 So.2d 1087, *writ denied*, 04-0459 (La. 4/23/04), 870 So.2d 301. In those cases, we held that a forfeiture of benefits arising from a violation of La.R.S. 23:1208 commences only after the fraudulent statements are made and the employer becomes aware of them. La.R.S. 23:1208(D).

As stated above, Courville was released to light duty work on January 5, 2004, and worked at such until SCI terminated that position on March 2, 2004. When SCI failed to reinstate his benefits, he filed the disputed claim for compensation which instituted this action. Dr. Montgomery testified that he would permanently restrict Courville to light-duty work based on both his total knee

6

replacement and his spinal stenosis. He further stated that SCI never sought his approval for any potential position it identified for Courville.

Based on the evidence in the record, we find that no genuine issue of material fact exists regarding Courville's entitlement to indemnity benefits following his work-related injury. As we have reversed the workers' compensation judge's grant of summary judgment on the issue of fraud, and as SCI has failed to present any evidence of his earning capacity, Courville's supplemental earnings benefits are reinstated based on a zero earning capacity as of March 3, 2004.

## COURVILLE'S MOTION FOR SUMMARY JUDGMENT

In his fourth assignment of error, Courville claims that the workers' compensation judge erred in not granting his motion for summary judgment on the issues of medical and indemnity benefits, penalties, and attorney's fees. He argues that although Dr. Montgomery related the aggravation of his spinal stenosis to his work-related injury, SCI refused to authorize the recommended medical treatment. Courville further argues that there is no evidence that SCI has offered him a light-duty job since it terminated his position on March 2, 2004.

We have already held that Courville is entitled to supplemental earnings benefits at a zero earning capacity. Although SCI was reasonable in relying on its La.R.S. 23:1208 claim, we find that there is no genuine issue of material fact regarding its failure to reinstate his indemnity benefits prior to the date it learned of his alleged fraudulent statements. SCI arbitrarily and capriciously refused to reinstate his benefits as of March 3, 2004, even though it did not learn of his statements until July 26, 2005. Accordingly, we award Courville $3000 in penalties on this issue.

7

La.R.S. 23:1201.

With regard to medical treatment, the record is clear that Dr. Montgomery related Courville's aggravation of his preexisting spinal stenosis to his work-related injury and total knee replacement. As of February 16, 2004, he recommended that Courville undergo a series of three lumbar epidural steroid injections. On August 2, 2004, he noted that Courville's spinal stenosis preexisted his knee injury, but opined that it was exacerbated by his injury and total knee replacement. On August 23, 2004, he clarified his position to SCI's medical case manager, Diane Johnson. Despite this, SCI still refused to authorize the treatment, even though Dr. Gregory Gidman, SCI's choice for a second orthopaedic opinion, found Dr. Montgomery's impression and recommended treatment was reasonable. At some point in 2006, SCI finally authorized the injections.

After reviewing the record, we find no genuine issue of material fact with regard to the fact that Courville's preexisting spinal stenosis was exacerbated by his work-related injury and its aftermath. Accordingly, we find that he is entitled to continuing medical treatment as recommended by Dr. Montgomery, as well as $3000 in penalties based on SCI's arbitrary refusal to authorize the recommended treatment even after Dr. Montgomery clarified his position. La.R.S. 23:1203. Furthermore, we award Courville $8000 in attorney's fees for work performed at the lower level and on appeal. La.R.S. 23:1201(I).

**FRAUD**

In his final assignment of error, Courville argues that the workers' compensation judge erred in refusing to consider the fraudulent representations made

by SCI in its responses to his requests for admissions. However, as this document is not contained in either the record or in the exhibits supplemented to the record, we need not address this assignment.

## CONCLUSION

For the foregoing reasons, the judgment of the workers' compensation judge granting summary judgment in favor of SCI is reversed and the matter is remanded for further proceedings. Judgment is also rendered granting summary judgment in favor of Courville awarding him supplemental earnings benefits at a zero earning capacity as of March 3, 2004, continuing medical treatment, and $6000 in penalties and $8000 in attorney's fees. The costs of this appeal are assessed to the defendant-appellee, SCI Louisiana Funeral Service.

**REVERSED; RENDERED; AND REMANDED.**

9