• WILLIAMS, J.
hThe claimant, Bobby Ehrman, appeals' a judgment dismissing his claims for worker’s compensation benefits. The Worker’s Compensation Judge (WCJ) found that claimant had forfeited his right to receive benefits. For the following reasons, we reverse, render and remand.
FACTS
On February 2, 2014, Bobby Ehrman was injured while working at Graphic Packaging International, Inc. (“Graphic"), located in West Monroe. Ehrman injured his left' shoulder and neck when lifting a bundle of cartons from a stack. He reported the accident and: saw the company nurse, who sent him to St. Francis Occupational Medicine Clinic (“OccuMed"). Based on his symptoms, Ehrman was initially diagnosed with a left shoulder injury and was restricted to light duty with a limitation of lifting no more than 15 pounds with his left arm. Ehrman continued working full time in a light-duty position at Graphic. During this time, the employer paid Ehrman supplemental earnings benefits (SEB) because he was unable to earn 90% of his pre-injury wage- in the light-duty job. -
In April 2014, an MRI showed herniated discs in Ehrman’s neck. He was referred to a neurosurgeon, Dr. Bernie McHugh, who ordered a CT/rnyelogram. In May 2014, Graphic stopped paying SEB. In September 2014, Dr, McHugh recommended that Ehrman have - cervical fusion surgery at three levels and continued the light-duty work restrictions. In October 2014, Ehrman was seen by Dr. Donald Smith, who was chosen by the employer. Dr. Smith agreed with the need for surgery. The employer did not respond to Dr. McHugh’s request for approval of the surgery, .effectively denying the request.
| pThe claimant, Bobby Ehrman, filed a Form 1009, Disputed' Claim for Medical Treatment, seeking approval of the surgery. After a review, the Medical Director found that the surgery was not necessary based on the clinical findings and diagnostic tests, Claimant then filed a disputed claim seeking payment of SEB, approval of the recommended surgery and resolution of an issue regarding calculation of the average weekly wage (AWW).
After trial, the WCJ issued oral reasons for judgment. The WCJ found that claimant had proven that the recommended surgery was necessary and that he was entitled to SEB, but that the vacation time sold back to the employer should not be included in his AWW. However, the WCJ further found that claimant had misrepresented his physical limitations and forfeited his right to compensation. The WCJ reridered judgment dismissing claimant’s claim for benefits. The claimant appeals the judgment.
DISCUSSION
The claimant contends the WCJ erred in finding that he forfeited his right *948 to receive workers’ compensation benefits. Claimant argues he is entitled to receive compensation benefits because he did not wilfully make a false statement to obtain benefits.
It shall be unlawful for any person to willfully make a false statement or representation for the purpose of obtaining or defeating any workers’ compensation benefit or payment. La. R.S. 23:1208. Any employee who violates this section shall, upon determination by the workers’ compensation judge, forfeit any right to compensation benefits. La. R.S. 23:1208(E). This statute authorizes forfeiture of benefits upon proof that (1) there is a false statement or representation; (2) willfully made; (3) for the purpose of |sobtaining or defeating any benefit or payment. Resweber v. Haroil Const. Co., 94-2708 (La. 9/5/95), 660 So.2d 7; Franklin v. Health-South, 41,458 (La.App. 2 Cir. 9/20/06), 940 So.2d 83. Forfeiture is a harsh remedy and must be strictly construed. Franklin, supra; Reynolds Indust. Contractors v. Fox, 41,051 (La.App. 2 Cir. 6/28/06), 935 So.2d 783. All of these elements must be present before a claimant can be penalized. The determination of misrepresentations for forfeiture of benefits is subject to the manifest error standard of review. Reynolds, supra.
In the present case, the defendant presented surveillance video and the testimony of Kenneth Rosebush, an investigator who followed claimant to videotape his activities outside of work. Rosebush testified that on May 23, 2014, he drove to a rural residence where he saw claimant using a chainsaw to cut tree branches. Rosebush stated that claimant was pulling and tossing branches that were “small to medium” in size. Rosebush estimated that the video of claimant with a chainsaw was approximately three minutes in duration. Rosebush testified that the next day he observed claimant cutting his lawn by pushing a lawnmower with both arms. Rosebush stated that on January 9, 2015, he filmed claimant at a grocery store placing cases of water and soda into his truck with both hands. Rosebush testified that later the same day he saw claimant twice carry a 50-pound sack of deer corn from a store to his truck.
The claimant testified that after his work accident he received medical treatment at OccuMed and was placed on light duty work with a restriction of no lifting over 15 pounds with his left arm. Claimant stated that Dr. McHugh recommended surgery which was denied by the employer’s administrator. Claimant testified that in the video of May 2014, he was at an | ¿elderly friend’s house using a small chainsaw to trim branches from a fallen tree. Claimant stated that at one point he pulled a snagged limb with his right hand and then dragged the branch with his left hand. Claimant acknowledged that the January 2015 video showed him carrying two bags of deer corn that each weighed 50 pounds. He stated that he picked up each bag primarily with his right arm while “guiding” with his left arm and carried the bag on his right shoulder to the truck. Claimant testified he did not have any problems with his right arm, with which he tries to do as much as possible, and that he uses his left arm so that those muscles do not further waste away. Claimant stated that the vibration involved in using the chainsaw and lawnmower was not as extreme as the vibration caused by the blower chipper that he had used at work. Claimant testified that in his deposition he had stated that he stayed within his physical restriction of not lifting more than 15 pounds with his left arm. He stated that vibration causes pain in his left arm but he is able to use his left arm.
*949 The deposition of Dr. Bemie McHugh, a neurosurgeon, was admitted into evidence. Dr. McHugh testified that in August 2014, he saw claimant with complaints of pain in his neck and left arm after a work injury. Dr. McHugh stated that he recommended surgery after the myelogram results showed narrowing of the nerve at the C3-4 level. Dr. McHugh testified that the muscle atrophy of claimant’s left arm indicated an impingement of the nerve to his arm. Dr. McHugh opined that even though claimant is able to pull branches or use a chainsaw, surgery is still required because his nervous system could be permanently damaged with another traumatic event like an auto accident. Dr. McHugh stated that his opinion that surgery was necessary was not changed by claimant’s activities shown on the video. Dr. | RMcHugh testified that those with neck problems such as the claimant’s will have bad days when the pain is worse and good days when they feel able to do more activity.
Defendant asserts that the surveillance video and testimony show that claimant engaged in activities beyond his 15-pound lifting restriction contrary to his deposition testimony that he stays within the restriction. Defendant cites Franklin, supra, in support of its position that claimant made willful misrepresentations to receive compensation benefits. However, the situation in this case can be distinguished from that of Franklin, in which the employee denied the ability to do light-duty work and falsely stated she did not have any other job while managing a restaurant. Here, in contrast, claimant began working a light-duty job shortly after his accident and continued to perform thaf work up to the time of trial.
Specifically, defendant contends the claimant’s deposition statements that vibration causes him pain and that hunting did not require heavy lifting were false based on the video showing him using a chainsaw, dragging branches and carrying sacks of corn. In the deposition, when asked if he was unable to use his left arm, claimant stated “I use my left arm ... but it’s more as a guide.” When asked if he could do “anything involving vibration of a motor,” claimant responded “I’m sure I can do it, but how long I don’t know.” Claimant stated he had hunted on some weekends and ■ was asked whether deer hunting involved “a lot of heavy lifting or was it just your gun” and he replied “just my gun.”
Although the WCJ found that the statements about vibration were not fraud, defendant asserts that claimant made false statements when he said he complied with the weight restriction after dragging branches and did not | (¡mention the sacks of corn when asked about the lifting required in hunting. However, the deposition excerpts introduced into evidence demonstrate that claimant was never specifically, asked if he had dragged tree limbs or used corn for hunting. Rather, the employer asked only general questions about claimant’s activities outside of work. After reviewing the deposition testimony, we cannot say that claimant’s ambiguous answers to vague questions asked at a deposition constitute willful misrepresentations.
Defendant also emphasizes the WCJ’s finding that claimant was being deceptive and lacked credibility based on certain of his deposition statements and the activities depicted in the video. However, the record shows that the WCJ’s finding resulted from an incorrect view of the evidence. In the oral reasons for judgment, the WCJ stated that the surveillance video “clearly showed claimant lifting” sacks of corn and that the investigator “testified he observed claimant lifting” 50-pound sacks of deer corn. The video actually showed claimant carrying, not lifting, the sack of corn on his *950 right shoulder and the investigator testified he had seen claimant carrying the sacks after leaving the store. This distinction is important because the claimant’s restriction involved lifting and such a mistake about the evidence may have affected the WCJ’s assessment of claimant’s credibility. In addition, the WCJ did not express concern about claimant’s credibility in making the determination that he is entitled to SEB and that the medical evidence shows that surgery is required.
We note that the physical restriction assigned to claimant pertains to the conditions under which he was released to return to work. Contrary to the WCJ’s finding that claimant’s ability to lift 15 pounds is critical to his compensation claim, there was no showing at trial that his ability to lift a 17particular weight in isolated instances necessarily meant that he would be able to perform the strenuous duties required by his previous job as an operator of a gluer machine. The WCJ’s ruling that claimant would be entitled to SEB is a tacit recognition that claimant’s medical condition prevented him from performing the tasks of his previous job. Further, Dr. McHugh’s testimony indicated that his opinion that surgery was necessary and that claimant should continue with light-duty work would not change if claimant could sometimes lift more than 15 pounds.
The record shows that claimant’s SEB claim and request for surgery, are 'not based on whether he is able to lift 15 pounds, but on his medical condition and his inability to earn his pre-injury wage because he cannot perform his prior job. Based upon the medical evidence in the record, the WCJ erred in finding that claimant’s ability to lift more than 15 pounds has a direct bearing on the nature and extent of his .disability. Thus, even if we accept the WCJ’s finding that claimant falsely stated that he stays within his lifting restriction, the tenuous relationship between the claimant’s deposition statement and his pending compensation claim demonstrates that the statement was not willfully made to obtain benefits. Consequently, the WCJ erred in determining that claimant forfeited his right to receive workers’ compensation benefits and we shall reverse the judgment,
Claimant also contends the WCJ erred in calculating the amount of his AWW. Claimant argues that 50 hours of vacation time taken as cash during the four weeks preceding the work accident should be included -in the calculation of his AWW.
The Louisiana Workers’ Compensation Law defines “wages” as the average weekly wage at the time of the accident. La. R.S. 23:1021(13). In | sthe determination of wages and the average weekly wage, no amount shall be included for any benefit or form of compensation that is not taxable to an employee for federal income tax purposes/ La. R.S. 23:1021(13)(f). The AWW also includes any money paid to the employee which can be regarded as remuneration or reward for his services irrespective of whether or not the payment was in the form of wages. Daigle v. Sherwin-Williams Co., 545 So.2d 1005 (La. 1989); Groover v. Lafitte’s Boudoir, Inc. 2014-0926 (La.App. 4 Cir. 3/18/15), 162 So.3d 1184. Wiere other types of remuneration provide a real and reasonably definite economic gain to the employee, such as bonuses or tips, those payments should be included in computing the AWW. Hargrave v. State DOTD, 2010-1044 (La. 1/19/11), 54 So.3d 1102; Groover, supra.
In the present case, the payroll records show 50 hours of “vacation sold” by claimant in the amount of $889.50 on January 12, 2014. The record shows that this payment for vacation time is part of the remu *951 neration for claimant’s work services and should be included in the calculation of his AWW. Thus, we must reverse the WCJ’s ruling that this amount was excluded from the AWW. However, we note that such a sale of vacation time is not the- typical situation. Consequently, we shall remand this matter to give the parties an opportunity to present evidence and legal authority regarding the issue of the proper method of calculating the claimant’s AWW to include the amount -of vacation pay received by claimant during the relevant period.
CONCLUSION
For the foregoing reasons, the judgment is reversed. Judgment is hereby rendered in favor of the claimant, Bobby Ehrman, approving the | nrecommended surgery. This matter is remanded for the calculation of the average weekly wage and the supplemental 'earnings benefits to be paid to claimant. Costs of this appeal are assessed to the appellee, Graphic Packaging International, Inc.
REVERSED; JUDGMENT RENDERED APPROVING SURGERY; REMANDED.
APPLICATION FOR REHEARING
' Before WILLIAMS, DREW, MOORE, PITMAN and GARRETT, JJ.
Rehearing denied,