998 So.2d 168 (2008)
Chalander SMITH
v.
AFS, INC. d/b/a Mr. Fixit's Joseph Anderson and ABC Insurance Company.
No. 08-CA-332.
Court of Appeal of Louisiana, Fifth Circuit.
October 28, 2008.
*169 Carl A. Butler, Gloria T. Lastra, Attorneys at Law, Metairie, LA, for Plaintiff/Appellant.
James M. Benson, Attorney at Law, Metairie, LA, for Defendant/Appellee.
Panel composed of Judges SUSAN M. CHEHARDY, WALTER J. ROTHSCHILD, and FREDERICKA HOMBERG WICKER.
WALTER J. ROTHSCHILD, Judge.
In this negligence case, plaintiff appeals from a judgment of the trial court granting defendant's motion for directed verdict/involuntary dismissal.[1] For the reasons stated herein, we affirm.
In May of 2006, Chalander Smith brought her 1993 Toyota Corolla to Mr. Fixit's in Laplace, Louisiana for repairs. While in the care of the repair shop, the vehicle was stolen and allegedly vandalized by an unknown third party. The vehicle was subsequently located by the sheriff's department and was eventually returned to Ms. Smith.
Plaintiff subsequently filed the present petition for damages against Mr. Fixit's, its owner, Joseph Anderson, and their insurance company. Defendants answered the petition with a general denial, and the matter proceeded to a bench trial. Following the presentation of plaintiff's case, defendant moved for a directed verdict on the grounds that plaintiff did not prove with sufficient evidence her claims for damages. After a recess in the trial, the trial court granted the motion, dismissed plaintiff's case at her costs and assigned written reasons for judgment.
By this appeal, plaintiff contends that the trial court erred in its ruling as the evidence presented shows plaintiff met her burden of proving defendant's liability and her entitlement to damages. She contends the trial court's judgment should be reversed and judgment should be entered in her favor.
The trial court granted judgment on the basis of La. C.C.P. art. 1672, which provides in pertinent part:
B. In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
When a motion for dismissal at the close of plaintiffs evidence is made, the trial court should apply the preponderance of the evidence standard in weighing and evaluating the evidence. Mott v. Babin Motors, Inc., 451 So.2d 632, 637 (La. App. 3d Cir.1984). Proof by a preponderance of the evidence means that, taking the evidence as a whole, such proof shows that a fact sought to be proved is more probable than not. Fuller v. Wal-Mart Stores, Inc., 519 So.2d 366, 369 (La.App. 2d Cir.1988).
In the present case, plaintiff's cause of action was based on a theory of negligence which requires a duty/risk analysis. A duty-risk analysis involves five elements which must be proved by the plaintiff: (1) proof that the defendant had *170 a duty to conform his conduct to a specific standard (the duty element); (2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiffs injuries (the cause-in-fact element); (4) proof that the defendant's substandard conduct was a legal cause of the plaintiffs injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damages element). Long v. State ex rel. Dept. of Transp. and Development, 04-485 (La.6/29/05), 916 So.2d 87, 101.
After hearing plaintiff's case, the trial court determined that plaintiff's burden of proof of the elements regarding duty, breach and cause were satisfied at trial. However, the court granted the involuntary dismissal on the basis that plaintiff failed to submit competent proof that she sustained actual damages as a result of the theft of her vehicle from defendant's place of business. As this is an element of a cause of action in negligence, the trial court concluded that failure to prove actual damages in a negligence case is fatal to her cause of action. We agree.
Plaintiff presented the following testimony at trial:
Ronald Nicholas, plaintiff's husband, testified that plaintiff's 1993 Toyota Corolla was taken to Mr. Fixit's on May 1, 2006 to repair the radiator because the car "was running hot." Mr. Nicholas stated he had just put a new engine in the car, but he did not have records to support this. He also stated he put new tires on the vehicle and that the car was in good shape. Mr. Nicholas also stated that his wife was having problems with the air conditioner in the vehicle and that the thermostat needed to be replaced. Mr. Nicholas did not get this information from Mr. Fixit's, but from his cousin who was a licensed mechanic.
Mr. Nicholas stated that after the vehicle was stolen, it was in worse condition than when the vehicle was brought to the repair shop on May 1, 2006. He stated there was a bullet hole in the vehicle that had not been there previously.
Plaintiff, Chalander Smith, testified that she brought her vehicle to Mr. Fixit's on May 1, 2006 for a brake job. She paid for the repairs when the work was completed. She testified she brought the vehicle back to the shop a few days later because the air conditioning was not working properly, and she was told she needed to replace the thermostat for a cost of $36.00. The next thing she heard was that the car had been located by a police officer in Reserve. The vehicle was towed back to Mr. Fixit's, but no further repairs were made. Plaintiff testified that she received an offer from Mr. Fixit's to repair the vehicle for the cost of the parts, but she refused because she believed the damage to the vehicle was caused by defendant's negligence in allowing the vehicle to be stolen. The vehicle was then moved to Firestone, and documentation admitted into evidence indicates the radiator, the fan, the shroud and the thermostat were found in the back seat of the vehicle.
Plaintiff testified that after the vehicle was stolen, she used her brother's truck to travel to work. She stated that she purchased a new vehicle for $5400 in January of 2007. Up until this time, she paid her brother $100 per week including gas for the use of the truck for transportation to and from work, although she had no receipts or other documentation to support this. At the time, she was employed as a home health nurse and earned $17 per patient plus mileage, usually seeing 4-5 patients per day. She stated she missed a "couple of days" of work because she did not have transportation. She stated she *171 had trouble getting to work for about 30 days and had to reschedule some appointments. When she missed an appointment, she was required to complete a form, but she was unable to produce any of those forms at trial because they were turned in to her employer. On cross-examination, she acknowledged her deposition testimony in which she stated she did not miss any visits, but she believed at trial that she missed some. She also stated that the loss of her vehicle and her inability to work as a result caused her to have marital problems. Finally, Ms. Smith testified that the vehicle was in excellent condition when it was brought to the repair shop.
On cross-examination, plaintiff testified that she brought her vehicle to the shop to have the air conditioner repaired, and that she agreed to replace the thermostat. She was informed by the sheriff's department that her vehicle had been located, and Mr. Fixit's confirmed that it had been taken from their establishment.
Joseph Anderson, the manager of Mr. Fixit's and the father of the business owner, testified that plaintiff's vehicle was brought to the shop in May of 2006 for a brake repair job. Following the completion of the work, plaintiff paid the invoice in the amount of $889.70. Mr. Anderson stated that plaintiff brought the car back to the shop on May 9, 2006 because the air conditioner was not working properly. Mr. Anderson also discovered the car was running hot, and he called plaintiff to give her an estimate of the repairs. An invoice admitted into evidence indicates that the estimate to repair the air conditioner was $977.03 and the estimate to repair the cooling system was $327.25. Plaintiff rejected these repairs, but agreed to have the thermostat replaced at a cost of $45.00. The thermostat was replaced and plaintiff was told to pick up the vehicle. Thereafter, plaintiff phoned Mr. Anderson to inform him the vehicle had been removed from the repair shop and had been discovered by the sheriff's office in Reserve. Mr. Anderson had the vehicle towed back to his shop. He did not recall whether there was additional body damage to the car which was not present when plaintiff brought the car to the shop. Mr. Anderson inspected the vehicle and found that the car was running hot and offered to repair the vehicle without charging plaintiff for his labor costs. Plaintiff rejected this offer, and someone picked up the car and brought it to Firestone. Mr. Anderson testified that the repairs that needed to be done to the vehicle before the theft were the same repairs that were necessary after the car was returned.
Chris Cleaver testified that he was a service advisor and lead technician at Mr. Fixit's at the time of this incident. He stated he performed the brake repairs on plaintiff's vehicle and he also gave plaintiff an estimate of repairs to the air conditioning system and the cooling system. He stated plaintiff declined the work, and opted to replace the thermostat. Mr. Cleaver stated that as long as the vehicle was moving and not idling for a period of time, the car would not overheat. Mr. Cleaver also stated that after the thermostat was replaced, plaintiff's husband brought the vehicle back again because the vehicle was overheating. He said the car was left at the shop overnight and it was stolen that night. He also testified that when the vehicle was returned to the shop after the theft, it was in the same condition as when it had been originally brought in. He stated the vehicle was in bad shape when it was brought to the shop. Mr. Cleaver also submitted a written narrative he prepared of the events surrounding this incident and the document was admitted into evidence.
*172 Plaintiff also submitted the testimony of Bernard Smith who was the individual who discovered plaintiff's vehicle in Reserve after it was stolen from the repair shop. He stated that it was apparent that the vehicle had overheated as smoke was coming from the hood, and he called plaintiff to report the situation. He also stated the vehicle was brought back to Mr. Fixit's. He also stated he saw the car later at Firestone and it looked like it had been taken apart.
After the conclusion of this testimony, plaintiff rested her case. At this point, counsel for defendant moved for a directed verdict on the basis that there was no proof that the vehicle had been converted by defendant or that plaintiff sustained any damage as a result of the theft. Defendant argued that plaintiff failed to submit competent evidence of the value of the vehicle before or after the theft. Plaintiff argued that the court could take notice of what the vehicle was worth and find it only became inoperable after the theft of the vehicle which was due to defendant's negligence. After a brief recess, the court ruled in favor of defendant on the motion for directed verdict. On October 11, 2007, the court signed a judgment granting an involuntary dismissal in favor of defendant and assigned written reasons for the judgment.
By this appeal, plaintiff argues that she submitted sufficient proof of the damages to her vehicle which were due to defendant's negligence or unlawful conversion. She also submits that the record supports an award for damages for loss of use of the vehicle, lost wages and mental anguish damages.
After a careful review of the testimony in the record and the documentary evidence submitted, we fail to find sufficient competent proof that plaintiff sustained actual damages as a result of the theft of her vehicle from defendant's repair shop. First, plaintiff failed to present documentation or expert testimony regarding the value of the vehicle. Although plaintiff and her husband both testified that vehicle repairs had been made prior to the theft, this testimony fails to present competent proof of the value of the vehicle sufficient to support a finding of actual damages. There was no evidence presented that the vehicle was a total loss after the theft or that there was damage to those portions of the vehicle which were repaired by plaintiff prior to the theft.
Further, the evidence indicates that the vehicle was returned soon after the theft, and the overwhelming bulk of the testimony indicates that the vehicle was in the same condition after the theft as it was prior to the theft. Although plaintiff contends that the estimate contained in the record for repair of the air conditioner and the cooling system was prepared after the car was stolen and was caused by the theft, the record indicates otherwise.
The record contains an estimate dated May 9, 2006 for the air conditioner and the cooling system, which is prior to the date of the theft. Further, plaintiff's husband testified the vehicle was "running hot" before it was brought in for repairs. At the time of the theft of the vehicle, these repairs were already necessary on the vehicle, and plaintiff failed to prove additional repairs were made necessary due to the theft of the vehicle. Thus, the record fails to contain any competent proof that the theft of the vehicle caused any actual damage to plaintiff's vehicle.
We find no evidence in the record that the vehicle was deemed a total loss. Plaintiff rests her claim on the fact that the vehicle was inoperable after the theft, but no evidence in the record supports the claim. Although plaintiff contends the record contains an invoice from Firestone for repairs to the vehicle, a review of this *173 document indicates it sets forth the general status of the vehicle, but no evidence of an estimate for repairs was included. There was testimony that a bullet hole was found in the car which was not present before the theft, but the record fails to contain an estimate to repair such damage.
With regard to loss of use, plaintiff testified she paid her brother $100 per week for use of his vehicle, but she failed to offer any documentation in the form of receipts or check stubs indicating such payments were made. Further, she testified that the payments included money for gasoline for the vehicle, and on the basis of her own testimony, there is no specific indication of the amount she paid her brother for the use of his vehicle.
In addition, although plaintiff claimed she lost wages as a result of the loss of use of her vehicle, her testimony on this claim in inconsistent and is not supported by documentation supporting her claim. She testified that she was required to complete a form for her employer if she missed an appointment, but she failed to submit copies of any such forms to substantiate such a claim. Proof of a claim for lost wages can be based on a plaintiffs own reasonable testimony absent contradiction or impeachment. Abadie v. City of Westwego, 94-536 (La.App. 5 Cir. 11/29/94), 646 So.2d 1229, 1236. Based on plaintiff's inconsistent and unsubstantiated testimony, there is no basis for an award for lost wages due to the theft of her vehicle.
Under the circumstances presented here, where the record is void of any competent proof of actual damage sustained by plaintiff as a result of defendant's negligence, we find no error in the trial court's ruling granting an involuntary dismissal of her claim. It was plaintiff's burden to submit competent proof at trial to substantiate her claim, and based on the evidence contained in the record before us, plaintiff has shown no right to relief. Accordingly, the judgment of the trial court is hereby affirmed. Plaintiff is to bear all costs of this appeal.
AFFIRMED.
NOTES
[1] Although defendants moved for a directed verdict under La. C.C.P.art. 1810, the trial court granted an involuntary dismissal pursuant to La. C.C. P. art. 1672.