685 So.2d 525 (1996)
Glenda A. DUPONT, Plaintiff-Appellant,
v.
HOLIDAY INN OF JENNINGS, et al., Defendants-Appellees.
No. 96-684.
Court of Appeal of Louisiana, Third Circuit.
December 11, 1996.
*526 Michael Benny Miller, Crowley, for Glenda Dupont.
Van Clifton Seneca, Lake Charles, for Holiday Inn and Cigna Insurance Company.
Before YELVERTON, WOODARD and AMY, JJ.
AMY, Judge.
This appeal arises from a case remanded by this court[1] with instructions for the Office of Worker's Compensation to calculate the claimant's average weekly wage. On remand, the hearing officer determined Glenda Dupont's average weekly wage to be $141.50. Plaintiff appeals the hearing officer's ruling asserting that the hearing officer erred in finding that the documentary evidence presented was the best evidence in this case to determine her average weekly wage. For the reasons which follow, the decision of the hearing officer is affirmed.

DISCUSSION OF THE RECORD
Glenda Dupont was employed as a waitress at the Holiday Inn in Jennings, Louisiana. On September 28, 1989, Ms. Dupont sustained a work-related injury to her left knee. Since the time of her injury, Ms. Dupont has complained that she has suffered from sharp pain, swelling, clicking, and locking of her left knee. On January 24, 1994, a hearing was held to determine whether Ms. Dupont was entitled to receive temporary total disability (TTD) benefits, supplemental earnings benefits (SEBs), medical benefits, attorney's fees, and statutory penalties. The hearing officer, in a judgment rendered May 25, 1994, denied Ms. Dupont TTD benefits, attorney's fees and penalties, but awarded her SEBs based on earnings of $253.41 for the four weeks prior to injury, plus 8% in tips and medical benefits. Ms. Dupont appealed from that decision and we amended and affirmed in part, reversed and rendered in part, and remanded with instructions. In that appeal, we concluded that the hearing officer had correctly awarded SEBs but had failed to state in her judgment Ms. Dupont's average weekly wage which was necessary to determine the appropriate level of benefits. In this court's original unpublished opinion, the third circuit instructed the tribunal to calculate Ms. Dupont's average weekly wage by combining La.R.S. 23:1021(10)(a)(i) and La.R.S. 23:1021(10)(d).[2]
On June 28, 1995, a hearing was held to determine Ms. Dupont's average weekly wage. In the case sub judice, the tribunal encountered three difficulties when determining Ms. Dupont's average weekly wage: (1) no actual accounting of tips received from cash sales was maintained by either party in this case; (2) the only records available for cash sales estimated tips at 8% of the sale as provided for by the United States Internal Revenue Service; and, (3) the only complete records, regarding the number of days and hours worked, date back only four weeks prior to the accident instead of the twenty-six week period contemplated by La.R.S. 23:1021(10)(d). Plaintiff's main contention was that her testimony, which estimated that *527 she earned between $125.00 and $200.00 per week in tips, was the best evidence for determining her average weekly wage. In support of this contention, the plaintiff argued that the defendants admitted in an answer to interrogatories, in another proceeding, that Ms. Dupont earned an average of $25.00 per day in tips.[3] As such, the attorney for the plaintiff argued that the answer to this interrogatory corroborated Ms. Dupont's testimony (i.e. $125.00 in tips for a five-day working week and $150.00 for a six-day working week). The defendants contended that this answer to the interrogatory was not an admission and was not based on an actual personnel record. The defendants further contended that the amount reported on Ms. Dupont's W-2 form (i.e. the actual amount of credit card tips, plus 8% of cash sales) was a reasonable estimate of the tips actually received. In making its decision, the tribunal found the amounts recorded on Ms. Dupont's W-2 form to be the "best evidence of her earnings." Accordingly, on April 3, 1996, the hearing officer determined that Ms. Dupont's average weekly wage was $141.50.
Ms. Dupont appeals from that decision and asserts that the hearing officer erred in finding that the documentary evidence was the best evidence in this case and in determining her average weekly wage to be only $141.50.

LAW
Ms. Dupont filed this appeal arguing that we should reject the factual findings of the hearing officer in determining her average weekly earnings. Specifically, plaintiff requests that the decision of the hearing officer be reversed and the more reasonable amount of $230.40 per week be recognized as her average weekly wage.[4]
Title 23 of the Louisiana Revised Statutes provides the appropriate standard for determining a claimant's average weekly wage to be applied when determining SEBs. Because Ms. Dupont was a full-time hourly employee, the hourly wage portion of her average weekly wage must first be calculated under La. R.S. 23:1021(10)(a)(i), which provides as follows:
(a) Hourly wages.
(i) If the employee is paid on an hourly basis and the employee is employed for forty hours or more, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the accident or forty hours, whichever is greater[.]
Secondly, a claimant's tips are to be calculated as "earnings" pursuant to La.R.S. 23:1021(10)(d), which provides as follows:
(d) Other wages. If the employee is employed on a unit, piecework, commission, or other basis, his gross earnings from the employer for the twenty-six week period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said twenty-six week period and multiplied by four; however, if such an employee has worked for the employer for less than a twenty-six week period immediately preceding the accident, his gross earnings from the employer for the period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said period and multiplied by four. *528 Thereafter, the two figures are added together to arrive at the claimant's total average weekly wage. It is this very calculation which was at issue on remand and from which this appeal arises.
It is well established in the jurisprudence that in worker's compensation cases, the appropriate standard of review to be applied by appellate courts is the manifest error-clearly wrong standard. As announced by the Louisiana Supreme Court in Stobart v. State through DOTD, 617 So.2d 880 (La. 1993), this standard of review requires the appellate court to perform a two part analysis. "First, the appellate court must conclude from the record that a reasonable factual basis does not exist for the trier of fact's findings. Second, the appellate court must further determine that the findings were clearly wrong based on the record." Dew v. V.I.S., Inc., 95-141, p. 3 (La.App. 3 Cir. 11/2/95); 664 So.2d 693, 695, citing Stobart, 617 So.2d 880. Furthermore, the Louisiana Supreme Court, in Canter v. Koehring Company, 283 So.2d 716, 724 (1973), stated, as follows: "When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review the appellate court should not disturb this factual finding in the absence of manifest error."
In the present case, the record evidenced that Ms. Dupont was paid $2.01 per hour or $80.40 per 40 hour week. However, there was a dispute over the appropriate amount to assign as tips regularly received by Ms. Dupont. To this issue the following testimony was presented.
Ms. Donna Boudin, the general manager of the Holiday Inn in Jennings, Louisiana since 1986, testified that a record of the actual amount of credit card tips was maintained by the hotel but that no record of the actual amount of tips from cash sales was maintained. Ms. Boudin further explained that it was hotel procedure and legally admissible practice to record an 8% tip on any cash sale when determining the amount to be reported as a waitress' earned income. Ms. Boudin also testified that the hotel only had complete records evidencing the days and hours actually worked for the four-weeks prior to the accident, instead of the twenty-six weeks period contemplated by La.R.S. 23:1021(10)(d). These payroll records were admitted into evidence and ultimately used by the hearing officer to determine the amount of Ms. Dupont's weekly average wage. The hotel's records for this four-week period revealed that Ms. Dupont worked a total of 17 days and received a total of $259.66 in tips ($72.92 on credit sales and $186.74 on cash sales) which equals an average in tips of $15.27 per day. Unlike the actual amount of tips from credit sales, the $186.74 amount of tips for cash sales was calculated by taking 8% of the total amount of cash sales. Additionally, Ms. Boudin testified that Ms. Dupont consistently worked the same amount of hours per week.
Ms. Dupont testified that she received between $125.00 to $200.00 per week in tips. However, when questioned whether she had records to support this amount Ms. Dupont responded that she had none. Additionally, plaintiff argued that, at a very minimum, the amount of $125.00 per week should be utilized by claiming that the defendants admitted to an average of $25.00 per day in tips when answering an interrogatory in another proceeding between the parties which was dismissed with prejudice. We find this argument to be without merit. The interrogatory answered by CIGNA Property & Casualty Companies, the employer's worker's compensation carrier, stated only that it was "believed that tips were averaged at $25.00 per day" in estimating Ms. Dupont's average weekly wage.
The hearing officer concluded that the documentary evidence, which provided the amount reported to the United States Internal Revenue Service, was the most reliable and probative evidence for determining Ms. Dupont's average weekly wage. In the hearing officer's reasons for judgment, she states the following:
Since Glenda Dupont earned tips, her earnings are calculated pursuant to LSR.S. 23:1021(10)(d). The record does not contain information to show the amount of tips that Glenda Dupont received nor the number of days she worked in the 26 week period immediately preceding the accident. *529 The Court has been provided only with documentary evidence of Glenda Dupont's earning for four full weeks preceding the date of the accident and those records contain an estimate of cash tips earned by Glenda Dupont. Since the record is incomplete as to the number of days Glenda Dupont worked in the 26 weeks prior to the accident, this Court[']s determination of Glenda Dupont's wages must either be calculated using the wages for the four full weeks preceding the accident or using Glenda Dupont's testimony of her earnings. The documentary evidence is different from Glenda Dupont's testimony.... Dupont may have earned more than she reported to the IRS and perhaps she earned as much as $200.00 per week in tips, but this Court believes the best evidence of her earnings is the documentary evidence. Since the actual amounts earned in the 26 weeks prior to the accident are not available, this Court will use the 4 weeks of wages available.
Accordingly, the hearing officer, using the information available for the four-week period preceding the injury, then proceeded to apply the formula provided for in La.R.S. 23:1021(10)(a)(i) and La.R.S. 23:1021(10)(d).
In reviewing the record in its entirety, we find that the hearing officer acted reasonably and was not clearly wrong in determining that the documentary evidence, presented in this case, was more credible than the claimants testimony concerning the average amount of tips earned per week. The testimony of Ms. Dupont was purely speculative and was not supported by any other evidence. Additionally, no other evidence was presented to cast doubt on the reasonableness of using the amount reported to the IRS. Like the hearing officer, after a careful review of the evidence and testimony presented in the case sub judice, we recognize that neither party claims to know the actual amount of cash tips received by Ms. Dupont; however, we agree that in this case the "best evidence of her earnings [was] the documentary evidence." Too, Ms. Boudin testified that Ms. Dupont consistently worked the same amount of hours per week. This testimony was uncontradicted. Therefore, we conclude that it is reasonable to believe that the four-week period used in calculating Ms. Dupont's average weekly wage was indeed representative of what would have been found if records for the full twenty-six week period would have been available. As such, we conclude that the hearing officer's credibility determination, in accepting the documentary evidence presented as more reliable than the testimony of the claimant, was not clearly wrong. Accordingly, the tribunal's decision determining Ms. Dupont's average weekly wage to be $141.50 is affirmed.

DECREE
The hearing officer's judgment is affirmed. All costs of this appeal are assessed to the plaintiff-appellant, Glenda A. Dupont.
AFFIRMED.
YELVERTON and WOODARD, JJ., concur.
NOTES
[1] See Dupont v. Holiday Inn, 94-01333 (La.App. 3 Cir. 5/17/95); 656 So.2d 63, writ denied, 95-1560 (La.9/29/95); 660 So.2d 874.
[2] As recognized in this court's original opinion, when a claimant is a fulltime hourly employee who earns tips, the tips regularly received by the employee must be included in the calculation of the employee's average weekly wage. See Daigle v. Sherwin-Williams Co., 545 So.2d 1005 (La. 1989); Deason v. Travelers Ins. Co., 242 So.2d 906 (La.App. 3 Cir.1971); cf. Allor v. Belden Corp., 393 So.2d 1233 (La.1981).
[3] The record reflects the following limited information: the interrogatories in question were answered in connection with an action entitled Dupont v. Holiday Inn, Docket No. 91-2200, Office of Worker's Compensation, District 03, which was subsequently dismissed with prejudice. Attorney for the defendants objected to the admission of this evidence stating that "those interrogatories were not filed inwere not answered in this proceeding." The present case bears Office of Worker's Compensation, District 03, Docket No. 92-5807.
[4] Attorney for the plaintiff reached this figure by factoring in the amount of $150.00 in tips per week when calculating Ms. Dupont's average weekly wage. In support of this contention, respecting the reasonableness of the above figure, the plaintiff argued in brief that the record maintained by Holiday Inn could not be used because it does not contain the actual days worked in the twenty-six week period prior to the accident. The plaintiff further argued that an average should be reached by examining Ms. Dupont's testimony that her tips averaged between $125.00 and $200.00 and the defendants' answers to interrogatories which "admitted" that Ms. Dupont earned between $125.00 and $150.00 in tips per week.