934 So.2d 183 (2006)
Charlene DUPREE
v.
INTERNATIONAL HOUSE OF PANCAKES.
No. 2005 CA 1021.
Court of Appeal of Louisiana, First Circuit.
May 5, 2006.
*184 Christopher A. Edwards, Lafayette, Counsel for Plaintiff/Appellant Charlene Dupree.
Chris Broadwater, J. Alan Jordan, Baton Rouge, Counsel for Defendant/Appellee International House of Pancakes.
Before: CARTER, C.J., DOWNING, and GAIDRY, JJ.
GAIDRY, J.
The claimant-appellant, Charlene Dupree, appeals the judgment of the Office of Workers Compensation Administration, District 5, awarding her weekly indemnity benefits for temporary total disability, but denying her claims for travel expense reimbursement and statutory penalties and attorney fees. For the following reasons, we amend the judgment and affirm it as amended.

PERTINENT FACTS AND PROCEDURAL HISTORY
In 2003, Charlene Dupree (claimant) was employed as a waitress by the defendant employer, International House of Pancakes (IHOP), at its restaurant on Siegen Lane in Baton Rouge. She earned an hourly wage of $2.13, supplemented by customer tips. She was employed over a period of thirteen weeks, but actually worked only eleven weeks during that period before a job-related injury on July 28, 2003. Her W-2 form for 2003 federal income tax purposes reflected total earnings of $5,015.98 in that employment. Of that total amount, $3,454.00 represented estimated tips based upon ten percent (10%) of her customer charges. Claimant filed a disputed claim for workers' compensation benefits on August 21, 2003.
Following her accident, claimant was first seen by Howard Gidden, M.D., a general practitioner, but was later referred by IHOP[1] to Richard Robichaux, M.D., a Baton Rouge orthopedic surgeon, for her complaints of low back, hip, and right knee pain. After being examined by Dr. Robichaux *185 over the course of approximately five weeks, claimant refused to be seen by him again following an office confrontation between the physician and claimant's husband over treatment options. Claimant then selected James Butler, M.D., of the Tulane University Clinic in New Orleans as her choice of treating orthopedic surgeon. Dr. Butler in turn referred claimant to his colleague, Michael E. Brunet, M.D., for evaluation and treatment of the knee complaints.
Following an examination of January 19, 2004, Dr. Brunet recommended a diagnostic arthroscopy of the right knee to remove a synovial cyst. After receiving Dr. Brunet's report, IHOP contacted claimant's former counsel on January 30, 2004 to schedule an examination with another orthopedic surgeon, other than Dr. Robichaux. An examination was scheduled for March 25, 2004 by Lawrence Messina, M.D., but claimant refused to attend that examination. IHOP filed a motion to compel claimant's attendance at a re-scheduled examination, and following a hearing on April 30, 2004, claimant was ordered to attend a re-scheduled examination on May 6, 2004. Following that examination and its receipt of Dr. Messina's report, IHOP approved the surgery recommended by Dr. Brunet.
The trial of the claim was conducted on May 20, 2004. The disputed issues were limited to the proper average weekly wage amount upon which temporary total disability benefits were to be based, claimant's entitlement to mileage expenses for travel to and from New Orleans for treatment, and claimant's entitlement to statutory penalties for IHOP's failure to pay or authorize payment for the recommended surgery within sixty days of written notice. The workers' compensation judge (WCJ) determined that claimant's average weekly wage was $447.32, but rejected claimant's claims for mileage reimbursement and statutory penalties. From that judgment, signed on May 25, 2004, claimant has instituted this appeal.

ASSIGNMENTS OF ERROR
Claimant assigns the following errors on the part of the WCJ:
(1) The average weekly wage of the claimant, as found by the trial court, is manifestly erroneous and not supported by the evidence presented at trial, and should be $543.20;
(2) The Administrative Law Judge [sic] was manifestly erroneous in failing to award mileage reimbursement to the claimant for her travel to see her choice of physicians from Baton Rouge to New Orleans as this was for reasonable and necessary medical expenses;
(3) The Administrative Law Judge [sic] was manifestly erroneous in failing to find Travelers Insurance Company [sic] [,] the insurer, arbitrary and capricious in their [sic] delay in approving the knee surgery or seeking a second opinion within 60 days;
(4) The Administrative Law Judge [sic] was manifestly erroneous in failing to include in the Judgment the stipulated facts; and
(5) Claimant is entitled to an award of attorney fees if successful on appeal.

ANALYSIS
Claimant contends that the WCJ erred in the determination of her average weekly wage by failing to apply the "other wages" formula of La. R.S. 23:1021(10)(d).[2] The *186 record shows that the WCJ reviewed IHOP's admittedly incomplete time records for the four weeks prior to the accident date and used the "hourly wages" formula of La. R.S. 23:1021(10)(a)(i) to calculate the hourly wage component of her earnings at $128.48, based upon a regular 40-hour workweek and average weekly overtime of 9.19 hours. The WCJ then used the "other wages" formula of La. R.S. 23:1021(10)(d) to determine the average weekly tip earnings of $318.84, based upon an average of six days worked per week (65 days total) over a period of eleven weeks actually worked.
The use of a combination of formulas to derive the average weekly wage of a waitress earning both regular hourly wages and tips has been approved by other courts. See Lummus v. Shoney's of LaPlace, 97-1140, pp. 2-3 (La.App. 5th Cir.6/30/98), 713 So.2d 1290, 1292; Dupont v. Holiday Inn of Jennings, 96-684, pp. 4-5 (La.App. 3rd Cir.12/11/96), 685 So.2d 525, 527-28. See also Daigle v. Sherwin-Williams Company, 545 So.2d 1005, 1007-08 (La.1989). We likewise conclude that this method is appropriate under the circumstances, and that the WCJ committed no error in utilizing it.
In addition to the wages reported on the W-2 form, claimant eventually received additional back wages of $959.18 as part of a settlement for a claim for unpaid wages made with the Employment Standards Administration of the U.S. Department of Labor. Regardless of whether the extant records of IHOP supported those additional claimed earnings, the evidence shows that claimant did in fact receive them in the form of compensation for work performed over the overall time period at issue, in addition to the earnings reported on her W-2 form. We conclude the WCJ erred in failing to consider that relevant evidence, supported by the uncontradicted testimony of Ms. Dupree. Giving claimant the benefit of the doubt, as our statutory scheme requires, we will assume that the unpaid overtime wages were earned in equal weekly increments over the entire eleven-week period, and that for the four full work weeks prior to the accident claimant actually earned an additional $87.20 in hourly wages per week.[3] Thus, her average weekly wage on an hourly wage basis was $215.68 ($128.48 + $87.20). Adding that sum to the average weekly tip earnings of $318.84, a total average weekly wage of $534.52 is obtained. We will therefore amend the judgment of the WCJ in that respect and hold that claimant's entitlement to weekly benefits for temporary total disability should be based upon that revised figure.

Travel Expense
Louisiana Revised Statutes 23:1203(D) provides that an employer is liable for "the actual expenses reasonably and necessarily incurred by the employee for mileage reasonably and necessarily traveled by the employee in order to obtain the medical services ... which the employer is required to furnish" for a job-related injury. (Emphasis supplied.)
Although IHOP authorized treatment by Dr. Butler and Dr. Brunet, it expressly declined to approve reimbursement for transportation to and from New Orleans. In a letter to claimant, IHOP noted that claimant's husband advised that he attended school in New Orleans and would be able to provide transportation for her. Additionally, the evidence at trial demonstrated, and claimant herself acknowledged, that there were other orthopedic surgeons in Baton Rouge who could have provided treatment within that specialty, *187 and that she opted to consult New Orleans physicians on the unsubstantiated assumption that other Baton Rouge physicians would be "prejudiced" against her by reason of her complaint against Dr. Robichaux.
In light of the foregoing, the WCJ concluded that although claimant's consultation of Drs. Butler and Brunet as her treating physicians was reasonable, her mileage expenses were not incurred "reasonably and necessarily," as appropriate treatment within that medical specialty was available in her geographical area. We agree that the determination of whether mileage expenses are "reasonably and necessarily incurred" in order to obtain medical services is a separate inquiry from that of whether the medical services are "necessary" under La. R.S. 23:1203(A). This factual finding by the WCJ is supported by the record and accordingly entitled to deference. See Anderson v. Eckerd Corporation, 04-1053, pp. 4-5 (La.App. 1st Cir.5/6/05), 915 So.2d 901, 904, writ denied, 05-1520 (La.1/9/06), 918 So.2d 1044. We find no manifest error.

Penalties and Attorney Fees Under La. R.S. 23:1201
Claimant contends that IHOP's failure to pay or authorize the payment of the diagnostic arthroscopic surgery recommended by Dr. Brunet within sixty days of January 24, 2004 constituted arbitrary and capricious conduct entitling her to the statutory penalties and attorney fees authorized by La. R.S. 23:1201(F). Our review of the evidence convinces us otherwise.
Claimant contends that it may reasonably be assumed, without further support, that the report was received by IHOP within "five working days" of the examination date of January 19, or by January 24, 2004.[4] The evidence in the record does not support that proposition. The report itself bears the notation that it was "electronically signed" by Dr. Brunet on January 26, 2004 and "run" (printed) on January 30, 2004. The latter date corresponds with the date of a letter to claimant from her attorney at that time, advising her of IHOP's request for an evaluation and second opinion relating to the surgery recommendation. The evidence supports the conclusion that IHOP received Dr. Brunet's report on January 30, 2004.
The record thus demonstrates that IHOP scheduled the second opinion evaluation of March 25, 2004 within the 60-day statutory deadline, but was prevented from obtaining the benefit of that opinion due to claimant's initial refusal to attend the appointment. Its failure to authorize or make payment for the recommended surgery within 60 days of January 30, 2004 can only be considered as attributable to "conditions over which the employer . . . had no control." La. R.S. 23:1201(F)(2). The WCJ's decision that claimant was not entitled to statutory penalties and attorney fees is fully supported by the record and cannot be considered manifestly erroneous. Our ruling in this regard obviates consideration of claimant's fifth "assignment of error" as to attorney fees on appeal.

Incorporation of Stipulated Facts in Judgment
Claimant complains that the judgment did not incorporate the facts stipulated by the parties for purposes of trial, and urges this court to amend or modify the judgment accordingly. Louisiana Revised Statutes 23:1317(A) requires a WCJ to "decide the merits of the controversy as *188 equitably, summarily, and simply as may be," and La. R.S. 23:1317(B) simply provides that "[t]he judgment rendered shall have the same force and effect ... as a judgment of a district court." There is no other direct statutory guidance as to the form of a judgment in a workers' compensation case, and claimant cites no authority for the proposition that stipulated facts should form part of a final judgment in a workers' compensation case. The judgment at issue adequately sets forth the ruling of the WCJ on those contested issues presented for her determination, and the WCJ's reasons for judgment are contained in the transcript of her oral ruling at the conclusion of the trial. Further, La. C.C.P. art.1918, governing the form of final judgments in civil cases generally, provides that "[w]hen written reasons for the judgment are assigned, they shall be set out in an opinion separate from the judgment." (Our emphasis.) Thus, it is procedurally improper to incorporate written reasons within the final judgment itself, and the same reasoning would logically apply to findings of fact forming part of reasons for judgment. See La. C.C.P. 1917(A).

DECREE
The judgment of the Office of Workers Compensation Administration, District 5 is amended to increase the average weekly wage of the claimant, Charlene Dupree, from $447.32 to $534.52. In all other respects, the judgment is affirmed. The costs of this appeal are assessed equally between the parties.
AMENDED AND, AS AMENDED, AFFIRMED.
NOTES
[1] The claim was actually administered by IHOP's workers' compensation insurer, Constitution State Service Company, which was not named as a defendant in the claim. For convenience, we will refer to IHOP and the insurer collectively as "IHOP."
[2] As amended effective June 10, 2004, former La. R.S. 23:1021(10) is now redesignated as La. R.S. 23:1021(12).
[3] $959.18 divided by eleven weeks yields a weekly sum of $87.20.
[4] Even if this assumed time frame of receipt were to be accepted, we note that the fifth day, January 24, 2004, was a Saturday, and thus not a "working day." The fifth "working day" would have been Monday, January 26, 2004.