DANIEL L. DYSART, Judge.
hln this worker’s compensation matter, appellant, Dean Groover, appeals the trial court judgment, seeking (1) a recalculation of his average weekly wage so as to include tips he received as part of his pay and (2) a reversal of the lower court’s determination that he is not entitled to *1186 supplemental earnings benefits. Appel-lees, Lafitte’s Boudoir, d/b/a “Big Daddy’s” (“Big Daddy’s”) and Louisiana Workers’ Compensation Corporation (“LWCC”), Big Daddy’s worker’s compensation carrier, answered the appeal, seeking to set aside the lower court’s award of (1) future medical expenses and (2) penalties and attorney’s fees. For the reasons that follow, we affirm in part, vacate in part and remand.
PROCEDURAL AND FACTUAL BACKGROUND
Sometime in 2006, Dean Groover was approached by an associate of Rick Cola-curcio, the owner or lessee of several establishments- located on Bourbon Street in the French Quarter, to work on the conversion of a bar into a live music club. Mr. Groover then became employed by Mr. Colacurcio for other duties, including the maintenance of several apartments, and the stocking of three bars, |2including “Big Daddy’s.” Mr. Groover was on the payroll for Big Daddy’s, and the parties stipulated that his weekly pay was $400. Mr. Groover’s pay was drawn on the account of Big Daddy’s; the records introduced into evidence confirm that Mr. Gro-over received $400 per week from Big Daddy’s from July, 2007 through September 3, 2007.[1]
On September 3, 2007, Dean Groover was involved in an altercation with another employee, Saint Jones, and as a result of this altercation, Mr. Groover injured his right shoulder, necessitating medical treatment, including surgery. Three days after the altercation, Mr. Groover’s employment with Big Daddy’s was terminated by Mr. Colacurcio.
Mr. Groover initiated this matter by filing a Disputed Claim for Compensation with the Office of Workers’ Compensation (“OWC”) on February 1, 2013.[2] The matter then proceeded to trial on October 17 and 25, 2013 before an OWC judge. On February 20, 2014, judgment was rendered in favor of Mr. Groover. The OWC judge concluded that: Mr. Groover was in the course and scope of his employment at the time of his fall on September 4, 2007; Mr. Groover was not the aggressor in the incident; Mr. Groover sustained injuries to his right shoulder, neck and head in the incident; Mr. Groover’s subsequent thumb injury |3and resulting surgical procedures were not causally related to the incident; and Mr. Groover is entitled to ongoing necessary and related medical care for his right shoulder.
The OWC judge further determined that Mr. Groover’s average weekly wage was $400, and therefore, his workers’ compensation rate was $266.67. The OWC judge further determined that Mr. Groover had carried his burden of proving entitlement to temporary total disability (“TTD”) benefits from September 8, 2007 through May 18, 2009, for which Big Daddy’s owed $23,392.77. The February 20, 2014 judgment also awarded:
• $4,050.00 representing fifteen weeks of permanent partial disability benefits of 66 2/3% of Mr. Groover’s weekly wage *1187 for a “permanent and seriously disfiguring” scar.[3] Big Daddy’s was given a credit of this amount because the TTD benefits awarded exceeded the permanent partial disability (“PPD”) award by 73 weeks;
• Medical bills as follows:
— City of New Orleans, Department of E.M.S. — $704
— Tulane University Hospital and Clinic — $5,933.32
— Ochsner — $1,693.73
— Medical Center of Louisiana New Orleans — $30,391.63
— Louisiana Physical Medicine & Rehabilitation Associates — $1,300
— East Jefferson Imaging Center— $210
— Dr. Anwar Bruni — $792
— Prescription medications— $255.54
The OWC judge, finding Big Daddy’s and LWCC to have been “arbitrary, capricious or unreasonable in failing to pay Mr. Groover’s indemnity benefits,” |4awarded $2,000 in penalties pursuant to La. R.S. 23:1201 F and attorney’s fees of $14,000 pursuant to La. R.S. 23:1201 F.
The February 20, 2014 judgment, however, denied supplemental earnings benefits because the OWC judge found that Mr. Groover either earned or was capable of earning 90% of his pre-accident wages since May 19, 2009. It further denied penalties and attorney’s fees sought in connection with the failure to timely pay medical bills, finding that Mr. Groover failed to establish that he had made written demand for payment under La. R.S. 23:1201 E.
From this judgment, Mr. Groover timely filed a petition for a devolutive appeal. Big Daddy’s and LWCC (sometimes hereafter collectively referred to as “Appel-lees”) answered the appeal, seeking to set aside the award of penalties and attorney’s fees and the OWC judge’s finding that Mr. Groover is entitled to ongoing medical care.
DISCUSSION

Standard of Review in General

This Court, in Greer v. Whole Foods Mkt., Inc., 13-0455, p. 4 (La.App. 4 Cir. 1/15/14), 133 So.3d 80, 84, writ denied, 14-0258 (La.4/4/14), 135 So.3d 1184, reiterated the well-settled standard of review of a workers’ compensation judgment:
The standard of review applied in a workers’ compensation case is the “manifest error-clearly wrong” standard. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, p. 6 (La.7/1/97), 696 So.2d 551, 556. The findings of the workers’ compensation court will not be set aside by the appellate court unless they are found to be clearly wrong after reviewing the record ini its entirety. Id. See also Irving v. Transit Mgmt. of Se. Louisiana, Inc., 10-0360, p. 2 (La.App. 4 Cir. 7/20/10), 44 So.3d 796, 798. In addition, the appellate court will |snot disturb the trial court’s findings of fact in the absence of manifest error, or unless it is clearly wrong.
We are not to decide whether the fact finder “was right or wrong, but whether the fact finder’s conclusion was a reasonable one.” Hahn v. X-Cel Air Conditioning, Inc., 12-0236, p. 4 (La.App. 4 Cir. 1/9/13), 108 So.3d 262, 266. Accordingly, “if the evidence contained in the record on *1188 appeal supports the factual determinations of the trier of fact, we are required to affirm the findings.” Id., 12-0236, p. 5, 108 So.3d at 266. With these principles in mind, we turn to the issues presented by this matter.

Average Weekly Wage

The February 20, 2014 judgment awarded Mr. Groover $266.67 in weekly workers’ compensation benefits, based on his weekly wage of $400, for the period from September 8, 2007 through May 18, 2009.[4] Mr. Groover contends that the OWC judge erred in limiting his weekly wage to $400, as the “uncontroverted and corroborated trial testimony established that[,] as part of his employment[,] Mr. Groover earned an average of $60.00 in nightly tip income.” The OWC judge rejected that argument, and in the Reasons for Judgment, found as follows:
Mr. Groover failed to produce any documentary evidence to support what, if any, actual tips he made in the relevant time period before his accident. Mr. Groover testified that his tips varied, as did a co-worker who had held the same position. However, there was nothing to allow anyone to calculate with any certainty how much Mr. Groover’s alleged tips, if any, were during this time period. Therefore, Mr. Groover failed to carry his burden to establish that the alleged tips should be included in his average weekly wage.
| (¡The Louisiana Workers’ Compensation Law (the “Act”) defines wages to mean the “average weekly wage at the time of the accident.” La. R.S. 23:1021(13). The Act provides several methods by which to determine the average weekly wage as set forth in La. R.S. 23:1021(13): hourly wages, monthly, annual wages and “other wages.”[5] The average weekly wage also includes “[a]ny money paid the employee which can be regarded as remuneration or reward for his services ... irrespective of whether or not the payment was in the form of wages.” Daigle v. Sherwin-Williams Co., 545 So.2d 1005, 1007-08 (La.1989), quoting Malone and Johnson, 14 Louisiana Civil Law Treatise, Workers’ Compensation § 324, p. 93 (1980). Thus, where other forms of compensation “provide a real and reasonably definite economic gain to the employee, such as bonuses, waitress tips, meals, board, lodging, laundry, or other similar services under the contract of employment,” they should be considered in computing the average weekly wage. Hargrave v. State ex rel. Dep’t of Transp. & Dev., 10-1044, p. 10 (La.1/19/11), 54 So.3d 1102, 1107, citing Malone & Johnson, 14 Louisiana Civil Law Treatise: Workers’ Compensation Law and Practice § 324 at 91-92 (2002). See also Anderson v. Eckerd Corp., 04-1053, p. 3 (La.App. 1 Cir. 5/6/05), 915 So.2d 901, 903 (“[t]he value of bonuses, if proven, will be included *1189 in the calculation of weekly wages for the purpose of determining the compensation rate.”).
17As the Louisiana Supreme Court recognized, “[a] problem arises” when an employee does not “fit ... into one of the narrowly drawn categories of La. R.S. 23:1021(10)[formerly, subpart (12); now, subpart (18) ].” Daigle v. Sherwin-Williams, Co., 545 So.2d at 1008. The plaintiff in Daigle was a salaried employee who was paid a fixed amount bi-weekly and also received incentive bonuses. After noting that the incentive bonuses fall within the “other wages” category, the Court looked to the documented bonuses the plaintiff had received in the 26 week period preceding his injury in order to calculate the plaintiffs average weekly wage pursuant to the Act.
The few cases which have addressed the specific issue of whether tips are included in the calculation of an employee’s average weekly wage have clearly established that tips are to be included. In Dupont v. Holiday Inn of Jennings, 96-684, p. 4 (La.App. 3 Cir. 12/11/96), 685 So.2d 525, 527, the court specifically noted that “a claimant’s tips are to be calculated as ‘earnings’” pursuant to the “other wages” provision of La. R.S. 23:1021. See also Dupree v. Int’l House of Pancakes, 05-1021, p. 5 (La.App. 1 Cir. 5/5/06), 934 So.2d 183, 186 (“[t]he use of a combination of formulas to derive the average weekly wage of a waitress earning both regular hourly wages and tips has been approved by other courts.”); Lummus v. Shoney’s of LaPlace, 97-1140, pp. 3-4 (La.App. 5 Cir. 6/30/98), 713 So.2d 1290, 1292 (“[w]e find that the appellant’s average weekly wage, as a waitress paid by the hour and with tips, is to be determined by using a combination of’ hourly | «wages and other wages.);[6] Deason v. Travelers Ins. Co., 242 So.2d 906, 909 (La.App. 3rd Cir.1971) (“the tips received by plaintiff should be considered as part of her weekly earnings for purposes of computing workmen’s compensation.”); G.N.B., Inc. v. Jones, 29,779, p. 8 (La.App. 2 Cir. 8/20/97), 699 So.2d 466, 471 (“In determining the amount of pre-injury wages an employee received, the court should consider any money paid the employee, which can be regarded as remuneration or reward for his services, irrespective of whether or not paid in the form of wages ... [which] should include anything of value received as consideration for work, such as tips and bonuses.”).
We also note that numerous courts have held that “[t]he value of fringe benefits, if proven, will be included in the calculation of weekly wages for the purpose of determining the compensation rate if such benefits were fairly contemplated by the parties to the contract of employment.” Johnson v. Louisiana Container Co., 02-382, p. 12 (La.App. 3 Cir. 10/2/02), 834 So.2d 1052, 1065 (emphasis added). See also Caparotti v. Shreveport Pirates Football Club, 33,570, p. 4 (La.App. 2 Cir. 8/23/00), 768 So.2d 186, 190; Transp. Ins. Co. v. Pool, 30,250, p. 6 (La.App. 2 Cir. 5/13/98), 714 So.2d 153, 157. Logically, in those employment fields where an employee’s wages are comprised of a low hourly wage, supplemented with tips (as is the case for waiters/waitresses or taxicab drivers), tips are “fairly contemplated” as part of the employee’s compensation. In Dea-son, for example, where the plaintiff, a waitress, was “paid a low weekly wage and it was contemplated by the employment contract that earnings would be supple- *1190 merited by tips ... the tips received by plaintiff should be considered as part |flof her weekly earnings for purposes of computing workmen’s compensation.” Deason, 242 So.2d at 909. There is no dispute between the parties in the instant matter that Mr. Groover’s fixed weekly wages were $400.[7] Based on our clear jurisprudence that tips are included in calculating the average weekly wage, the issue therefore is not whether Mr. Groover is entitled to include tips in this computation, but whether, based on the record before us, Mr. Groover offered evidence sufficient to prove the value of the tips he received. There is scant jurisprudence on the issue of what proof satisfies an employee’s burden of establishing his average weekly wage and there are no cases arising from this Circuit.
One case which dealt with this issue is the First Circuit decision of Weller v. Brown, 398 So.2d 551 (La.App. 1st Cir. 1979), which involved a waitress’ weekly wages. The trial judge noted that the plaintiff received wages of a $1.00 an hour, and in addition, she received tips and one daily meal, all of which the trial court considered in determining her weekly wage, stating:
Plaintiff estimated that she averaged $10.00 a day in tips. Defendants did not contradict this evidence. According to law, the employer is under an obligation to report the amount of employees’ tips to the Internal Revenue Service, which was not done. The established minimum wage at the time of .plaintiff s accident was $2.20 per hour and the court feels that plaintiff was making at least the minimum wage from tips and hourly wages at the time she was injured.
Id. at 555.
| ipThe First Circuit affirmed the trial court’s finding without any real discussion of the issue, although it is evident that the decision was at least, in part, based on the defendant’s testimony that she “felt like between what [the plaintiff] was getting paid and her tips ... she was getting the minimum wage.” Id. The trial court determined that the plaintiff was entitled to $80.78 (66 2/3% of .her weekly wage), although it is unclear how the trial court arrived at this figure.[8]
Another case dealing with this issue is Dupont, where the plaintiff was a waitress who was paid an hourly wage of $2.10 and received tips as well. Neither party had an accounting of the value of the plaintiffs tips, and the court noted that “the only records available for cash sales estimated tips at 8% of the sale as provided for by the United States Internal Revenue Service.” Id., 96-684, p. 2 (La.App. 3 Cir. 12/11/96), 685 So.2d 525, 526.[9] The defen *1191 dant’s general manager testified that “it was hotel procedure and legally admissible practice to record an 8% tip on any cash sale when determining the amount to be reported as a waitress’ earned income”, Id., 96-684, p. 5, 685 So.2d at 528. The parties in Dupont agreed as to the hourly wages paid to the employee; the dispute centered on the amount of plaintiffs tips. The plaintiff urged the hearing officer to accept her testimony, alone, that she earned between $125.00 to $200.00 per week in tips, even though she had no documentation to support her testimony.
InThe hearing officer rejected her testimony, relying on the documentation that did exist. While the restaurant at which the plaintiff worked kept records of tips reflected on credit card receipts, it maintained no records on cash tips. The amount of the tips from credit card sales, as reflected in the hotel’s records, was added to the plaintiffs wages. However, with respect to tips from cash sales, for which there were no records, the amount attributed to her weekly wages “was calculated by taking 8% of the total amount of cash sales” as reflected in the hotel’s records. Id., 96-684, p. 6, 685 So.2d at 528.[10]
The hearing officer found that, even though the plaintiffs testimony differed from the documentary evidence, and the plaintiff may have, in fact, earned more than was reflected in those documents, “the best evidence of her earnings is the documentary evidence.” Id., 96-684, p. 7, 685 So.2d at 529. In affirming the hearing officer’s findings, the Third Circuit concluded:
... [W]e find that the hearing officer acted reasonably and was not clearly wrong in determining that the documentary evidence, presented in this case, was more credible than the claimants [sic] testimony concerning the average amount of tips earned per week. The testimony of Ms. Dupont was purely speculative and was not supported by any other evidence. Additionally, no other evidence was presented to cast doubt on the reasonableness of using the amount reported to the IRS. Like the hearing officer, after a careful review of the evidence and testimony presented in the case sub judice, we recognize that neither party claims to know the actual amount of cash tips received by Ms. Dupont; however, we agree that in this case the “best evidence of her earnings' [was] the documentary evidence.”

Id.

\ i?The earlier decision of Deason, in which the Third Circuit found no error in the trial court’s acceptance of the plaintiffs testimony, corroborated by a co-worker, as to the amount of her average weekly tips, is not inconsistent with Dupont. In Dupont, the court rejected the plaintiffs estimate of the average amount of her tips insofar as her testimony “was not supported by any other evidence.” Deason, on the other hand, relied on supporting testimony of a co-worker as evidence of the plaintiffs tip income.
Our jurisprudence clearly establishes that a plaintiffs own testimony is sufficient to prove a lost wages claim, particularly when that testimony is corroborated by other evidence.. As this Court has repeatedly held, “[a] claim for lost wages does not have to be proven by mathematical certainty, it only requires such proof as reasonably establishes the claim.” Johnson v. Ray, 12-0006, pp. 11-12 (La.App. 4th Cir.12/5/12), 106 So.3d 629, 638, citing McDonough v. Royal Sonesta, Inc., 626 So.2d 438 (La.App. 4 Cir.1993). See also Moffitt v. Sewerage & Water Bd. *1192 of New Orleans, 09-1596, p. 18 (La.App. 4 Cir. 5/19/10), 40 So.3d 336, 347; Edwards v. Pierre, 08-0177, p. 15 (La.App. 4 Cir. 9/17/08), 994 So.2d 648, 659. It is also well-settled that lost wages may be proven by the testimony of the plaintiff alone. See Edwards, 08-0177, p. 15, 994 So.2d at 659, citing Ploger v. Reese, 01-2243, p. 13 (La.App. 4 Cir. 5/22/02), 819 So.2d 1114, 1121; McDonough v. Royal Sonesta, Inc., 626 So.2d 438, 440 (La.App. 4th Cir.1993). See also Smith v. AFS, Inc., 08-332, p. 10 (La.App. 5 Cir. 10/28/08), 998 So.2d 168, 173 (“Proof of a claim for lost wages can be based on a plaintiff’s own reasonable testimony absent contradiction or impeachment.”). In Rauch v. Schiavi, 00-160, p. (La.App. 5 Cir. 10/18/00), 772 So.2d 749, 757, for example, where the plaintiff testified that, prior to an accident, he earned $15.00 per hour, this 11stestimony, alone, was sufficient to sustain an award of $207,848.00 in lost wages (reduced by the plaintiffs 25% comparative fault).
This Court has noted, however, that the general rule that a plaintiffs testimony can establish a wage claim “is subject to the caveat that to allow a plaintiff to recover damages for lost wages when there is no independent support of the plaintiffs claim is highly speculative.” Edwards, 08-0177, p. 15, 994 So.2d at 659. However, proof may be sufficient when a plaintiffs testimony as to his wages is supported by other witnesses. See, e.g., Pierce v. Milford, 96-92 (La.App. 3 Cir. 9/25/96), 688 So.2d 1093, 1096, quoting Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151, 154-55 (1971). (“[A] claim for loss of earnings need not be proved with mathematical certainty, but only by such proof as reasonably establishes the claim. This may even consist only of the plaintiffs own reasonable testimony, if accepted as truthful; although of course the better practice is to introduce corroborating testimony.”); Davis v. Bowman, 346 So.2d 225, 227 (La.App. 4th Cir.1977), where this Court affirmed a lost wage claim based solely on the plaintiffs testimony that “he missed work for three days and earned $24.00 a day ... A claim for lost wages may be proven by plaintiffs own reasonable testimony, if accepted as truthful, although it is better to introduce corroborating testimony.”.
In the instant matter, Mr. Groover testified that his agreement with Big Daddy’s was that he would be paid “$400 a week plus tips.” While he did not keep an itemized accounting of the tips he received during the short period of time he worked for Big Daddy’s (less than 2 months), his testimony is that he received between $20 and $100 every day in tips (which was a “share” of the tips from the “night shift bartenders.”). Mr. Groover’s testimony was corroborated by a witness, |uthe Big Daddy’s employee who ultimately took over Mr. Groover’s job. That witness, William Harrison Johns, IV, testified that, during the time that he was employed by Big Daddy’s, he, too, received tips; he stated that “the least amount [he] ever was paid was $19 ... [and the most he] was paid was in the low $100’s.” He estimated that he received approximately $300 a week, or “$50, $60, $70 a day, whatever that comes out to when adding it up.” He confirmed that this testimony was “based on [his] experience.”
There is nothing in the record which casts doubt on either Mr. Groover’s or Mr. Johns’ testimony that, in the position held by Mr. Groover (and subsequently by Mr. Johns), the pay included tips, ranging between $20 and $100; the average of this range is $60 per day. As in Weller, “the Defendant ] did not contradict this evidence.” Weller, 398 So.2d at 555. Accordingly, we follow the Deason court and agree that Mr. Groover’s testimony, corroborated by Mr. Johns, establishes that *1193 his average weekly pay included his tip income.
Big Daddy’s correctly notes that tip wages are “other wages” as set forth in La. R.S. 23:1021(13)(d), and as noted by several courts. See, e.g., Ivory v. Southwest Developmental Ctr., 07-1201, p. 6 (La.App. 3 Cir. 3/5/08), 980 So.2d 108, 114, citing Stegall v. J & J Exterminating, 94-1279, p. 5 (La.App. 3 Cir. 3/1/95), 651 So.2d 400, 403, and Dupont, 96-684, p. 7, 685 So.2d at 528. Accordingly, Mr. Groover’s average weekly wage is to be determined using a combination of his actual weekly wage (See Morgan, 383 So.2d at 1070) and his “other wages,” which are to be calculated as follows:
If the employee is employed on a unit, piecework, commission, or other basis, his gross earnings from the employer for the twenty-six week period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said 11fitwenty-six week period and multiplied by the average number of days worked per week; however, if such an employee has worked for the employer for less than a twenty-six week period immediately preceding the accident, his gross earnings from the employer for the period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said period and multiplied by the average number of days worked per week.
La. R.S. 23:1021(13)(d)(Emphasis added).
The record indicates that Mr. Groover’s employment with Big Daddy’s began in July 2007, and he was last employed in early September 2007. Given that this period is “less than twenty-six weeks,” La. R.S. 23:1021(13)(d) directs that the tip income is to be calculated by taking his gross tip earnings (which we have determined to be $60 per day), dividing that sum “by the number of days the employee actually worked” which is then to be “multiplied by the average number of days per week.” The record is silent as to the number of days Mr. Groover actually worked for Big Daddy’s, and we can make no assumptions in this regard. The record, therefore, lacks sufficient information from which to calculate the amount of Mr. Groover’s tip income. Accordingly, we vacate the award for Mr. Groover’s average weekly wage and remand this matter to the lower court for a determination of Mr. Groover’s “other wages” pursuant to La. R.S. 3:1021(13)(d), a recalculation of his average weekly wage, and a recalculation of the amount of the temporary total disability benefits to which Mr. Groover is entitled.

Supplemental Earnings Benefits

In his next assignment of error, Mr. Groover argues that the record substantiates his claim for supplemental earnings benefits (“SEBs”). The OWC judge found that Mr. Groover failed to carry his burden of proof as to his inability “to earn ninety percent of his pre-accident wage.” In making this determination, 11fithe OWC judge noted that Mr. Groover’s vocational rehabilitation expert, Bobby S. Roberts, felt that Mr. Groover’s limitations were the result of industry demand rather than limitations from his injury. The OWC judge likewise found that Mr. Robert’s conclusion that his “vocational prognosis for getting to the point of performing sedentary work and gaining adequate skills for sedentary work is guarded to poor” was contradicted by his finding that Mr. Groover tested as above average “range of classification consistent with an excellent hands on learning style ... which is consistent with the way' he acquired his prior work skills.” Mr. Roberts also noted that there “is nothing in his personality pattern that *1194 would interfere with successful rehabilitation efforts.” [11].
The OWC judge also considered Mr. Groover’s medical records (and a notation that Mr. Groover reported that he was having no pain as of August 5, 2009) and his testimony as to his employment after he was terminated by Big Daddy’s. The OWC judge noted that Mr. Groover had revenues in relation to construction work ranging from $22,100 to $38,245, and, while Mr. Groover testified that much of those sums had been used to pay expenses and overhead, he “failed to produce evidence of how much” was “used to cover overhead.” The OWC judge likewise noted that, according to his treating physician, “Mr. Groover has also been self employed by travelling to Costa Rica to identify real estate for prospective buyers.”
Pursuant to La.Rev.Stat. Ann. 23:1221(8), an employee who sustains an “injury resulting in the [his] inability to earn wages equal to ninety percent or more of wages at time of injury,” is entitled to “supplemental earnings benefits, payable |17monthiy, equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment....” See also Poissenot v. St. Bernard Parish Sheriff’s Office, 09-2793, pp. 4-5 (La.1/9/11), 56 So.3d 170, 174. As the Poissenot Court explained:
Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. “In determining if an injured employee has made out a prima facie case of entitlement to [SEBs], the trial court may and should take into account all those factors which might bear on an employee’s ability to earn a wage.” It is only when the employee overcomes this initial step that the burden shifts to the employer to prove, by a preponderance of the evidence, that the ’ employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employee’s community or reasonable geographic location.
Id., 09-2793, pp. 5-6 (La.1/9/11), 56 So.3d 170, 174 (Citations omitted; footnote omitted).
It is well-settled that “[i]n determining whether [an OWC judge’s] finding that an employee has met his initial burden of proving entitlement to SEBs is manifestly erroneous, a reviewing court must examine all evidence that bears upon the employee’s inability to earn 90% or more of his pre-injury wages.” Id., 09-2793, p. 6 (La.1/9/11), 56 So.3d 170, 174-75 (Emphasis supplied), quoting Seal v. Gaylord Container Corp., 97-0688 (La.12/2/97), 704 So.2d 1161, 1166. Here, the OWC judge found that Mr. Groover “had subsequent employment in which he earned ninety percent of the wages he was making at Big Daddy’s.”
In our review of the record, we find no error in the lower court’s finding that Mr. Groover failed to meet his burden of proving entitlement to SEBs. In his case in chief, Mr. Groover did not testify about his earnings following the incident. On cross-examination, however, Mr. Groover admitted having worked after the incident, although the dates on which he worked are not evident from the record. He testified *1195 that he worked for D & R Construction, which employed him for fifteen weeks and paid him $500 per week. Mr. Groover then indicated that he would be receiving “promissory notes that [were] coming at the end” of certain jobs which were “becoming completed in elevation.” He further testified that he expected to “receive [$]100 to $200 a month.” The record does not show exactly how long Mr. Groover worked for D & R Construction. He indicated that he had been employed with D & R Construction for a year, but also testified that he was paid for only fifteen weeks.
Mr. Groover likewise testified that he had been employed by Payments Systems for four or five months, for which he had received commission less his own expenses. While he admitted that he had received approximately $1,000 (or as much as $1,600) per month, he testified that he had ceased that work because he “wasn’t making any money.” He did not give any specific information as to what his expenses were or what his actual earnings were after expenses.
Similarly, Mr. Groover testified that he worked for Southern Elevation and received approximately $20,000; however, he indicated that after he paid commission and laborers, he netted $6,000. He further testified that he “expected” to be paid additional sums from this company; if his records were correct, the company owed him a couple hundred thousand dollars.
haMr. Groover also testified that he performed commercial construction work for a neighbor, including painting and re-stuccoing jobs. According to Mr. Groover, she “was kind enough to give [him] something to do where he could pay [his] bills” initially, and then she gave him some “larger jobs” where he had to “bring in an associate” to help. Mr. Groover testified that she “paid in excess of $28,000” for one of the jobs, but could not recall how much he was paid for the other jobs. Mr. Groover then identified four payments totaling $66,245, which were made to “Blitz Construction.” However, Mr. Groover did not clarify what his relationship to Blitz Construction was, or what percentage, if any, of those payments he had received.[12]
Finally, we note that, according to Mr. Groover’s current treating physician, Dr. Dominique Anwar, Mr. Groover reported that he was earning money helping people locate houses in Costa Rica.
After reviewing the record, we find that, while it demonstrates that Mr. Groover worked after the incident, it does not provide sufficient information o establish when Mr. Groover worked or how much he actually earned. Accordingly, it is impossible to determine from the record whether Mr. Groover has been unable to earn ninety percent of his pre-injury wage. While Mr. Groover argues that Appellees failed to “prove what Mr. Groover earned or what it claims that he could actually earn,” it was Mr. Groover’s initial “burden of proving by a preponderance of the evidence, that [his] injury resulted in his inability to earn that |?flamount under the facts and circumstances of the individual case.” Moore v. City of New Orleans, 02-1036, p. 6 (La.App. 4 Cir. 1/29/03), 839 *1196 So.2d 380, 385, citing Seal v. Gaylord Container Corp., 97-0688, p. 4 (La.12/2/97), 704 So.2d 1161, 1166. We find no error in the OWC judge’s conclusion that Mr. Gro-over failed to “carry this burden.”

Future Medical Expenses

In their first assignment of error in their answer to the appeal, Appellees maintain that the OWC judge erred in finding that Mr. Groover is “entitled to ongoing necessary and related medical care” and that, to the extent that this finding is actually an award of future medical treatment, that portion of the judgment should be reversed.
Appellees are correct that “[a] plaintiff in a worker’s compensation case is not entitled to a judgment for future medical expenses.” Vallelungo v. City of New Orleans, 95-0264, p. 10 (La.App. 4 Cir. 5/1/96), 673 So.2d 1292, 1298. Indeed, “[s]uch a claim does not arise until the costs are incurred, but it is reserved to the employee by operation of law.” Id. Mr. Groover does not contest this issue.
We note that the judgment does not award any specific amount as future medical expenses; however, the judgment does expressly state that Mr. Groover is entitled to ongoing medical care. The First Circuit, in addressing a similar issue in Jones v. Texas Indus., 13-1272, p. 4 (La.App. 1 Cir. 3/19/14), 146 So.3d 581, 583, writs denied, 14-0818 (La.6/13/14), 140 So.3d 1192, 14-0820 (La.6/13/14), 140 So.3d 1192, found that such an award “is not an award of a specific amount for future medical expenses but rather an acknowledgment that Mr. Jones was entitled to future medical treatment related to the surgery and recovery.” The First Circuit |⅞1 found no error in the lower court’s acknowledgment of the plaintiffs right to future medical expenses, noting:
An employer is obligated to furnish all necessary medical expenses related to a work injury. La. R.S. 23:1203. A claimant many recover medical expenses that are reasonably necessary for treatment of a medical condition caused by a work-related injury. Under La. R.S. 23:1203, liability for medical expenses arises only as those expenses are incurred. A worker’s compensation plaintiff is not entitled to an award for future medical expenses. However, the right to claim such expenses is always reserved to him. Starnes v. Asplundh Tree Expert Co., 94-1647 (La.App. 1 Cir. 10/6/95), 670 So.2d 1242, 1247.

Id.

We agree with the reasoning of the Jones court. The judgment in this matter does not award any future medical expenses to Mr. Groover. Rather, it merely acknowledges his statutory right to claim that any future medical bills associated with his shoulder injury be paid by Big Daddy’s as they are incurred. We therefore find no merit to this assignment of error.

Penalties and Attorney’s Fees

Lastly, Appellees contend that the trial court erred in awarding penalties and attorney’s fees. As this Court recently reiterated, “[t]he determination of whether an employer in a workers’ compensation case should be cast with penalties and attorney fees is essentially a question of fact subject to the manifest error or clearly wrong standard of review.” Griffin v. Interim LSU Pub. Hosp., 12-0052, p. 7 (La.App. 4 Cir. 7/11/12), 97 So.3d 1121, 1126.
A worker’s compensation plaintiff may be entitled to penalties and attorney fees under La. R.S. 23:1201 F, which provides as follows:
Failure to provide payment in accordance with this Section or failure to consent to the employee’s request to 1^select a treating physician or change physicians when such consent is re *1197 quired by R.S. 28:11216 shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. The maximum amount of penalties which may be imposed at a hearing on the merits regardless of the number of penalties which might be imposed under this Section is eight thousand dollars.
Penalties and attorney’s fees will not apply “if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.” Albe v. Albe, 97-1042, pp. 4-5 (La.App. 4 Cir. 11/19/97), 703 So.2d 756, 759. As explained by the Louisiana Supreme Court in Brown v. Texas-LA Cartage, Inc., 98-1063, p. 9 (La.12/1/98), 721 So.2d 885, 890:
[T]o determine whether the claimant’s right has been reasonably controverted, thereby precluding the imposition of penalties and attorney fees under La. R.S. 23:1201, a court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed.
The record demonstrates that LWCC did not pay any of Mr. Groover’s medical records or compensation benefits. According to Jason LeBlanc, the LWCC claims representative who testified at trial, LWCC received notice of Mr. Groover’s claim on September 11, 2007. By September 17, 2007, it had taken statements of Saint Jones and a “Miss Elizabeth,” after which LWCC denied the claim on September 17, 2007, and notified Mr. Groover of its decision on October |¾¾3, 2007. According to Mr. LeBlanc, the denial was based on Mr. Jones’ having advised that he had fired Mr. Groover prior to the incident and the existence of a question as to who was the initial aggressor in the altercation between Mr. Groover and Mr. Jones. LWCC did not take statements from Lindsey Gear, the only eyewitness to the altercation, and did not speak with Mr. Cola-curcio to verify Mr. Groover’s employment status. According to his own testimony, Mr. Jones was not the owner of Big Daddy’s.
The OWC judge, in awarding penalties and attorney’s fees, found that “LWCC had a duty to investigate this claim properly, which duty it failed to discharge.” The OWC judge noted that the medical records from the date of the incident corroborated Mr. Groover’s version of the incident and, therefore, the LWCC “did not know who was telling the truth.” After a review of the entire record, this Court finds the decision to assess penalties and attorney fees against the appellants to be correct and reasonable.
CONCLUSION
Based on the foregoing, the OWC judgment is affirmed with respect to the denial of supplemental earnings benefits and affirmed with respect to the award of penalties and attorney’s fees. The OWC judgment’s award for average weekly wages is vacated and this matter is remanded for a determination of Mr. Groover’s “other wages” pursuant to La. R.S. 3:1021(13)(d), a recalculation of his average weekly wage, and a recalculation of the amount of the *1198 temporary total disability benefits to which Mr. Groover is entitled.
AFFIRMED IN PART, VACATED IN PART AND REMANDED.

. While Mr. Groover testified that he began working for Mr. Colacurcio in 2006, the record is not clear as to when Mr. Groover became an employee of Big Daddy’s. The copies of the paychecks introduced at trial only covered the period from July 16, 2007 through September 4, 2007.

. Mr. Groover initially filed an action sounding in tort in the Civil District Court for the Parish of Orleans. After a January, 2013 trial, the trial court granted an involuntary dismissal, finding that Mr. Groover’s exclusive remedy was under the Louisiana Worker’s Compensation Act. Mr. Groover then filed the instant action. We note that "a timely filed tort suit interrupts the running of prescription on a workers’ compensation claim.” Torres v. Louisiana Shrimp & Packing Co., 09-2792 (La.4/9/10), 32 So.3d 803.

. This award is based on La. R.S. 23:1221(4)(p), which provides that "where the employee is seriously and permanently disfigured ... solely due to a single traumatic accident ... compensation not to exceed sixty-six and two-thirds percent of wages for a period not to exceed one hundred weeks may be'awarded.”

. This award was made pursuant to La. R.S. 23:1221(l)(a), which provides that an employee who suffers "any injury producing temporary total disability ... to engage in any self-employment or occupation for wages” is to receive "sixty-six and two-thirds percent of [his] wages” for the duration of that injury.

. "Other wages" are calculated as follows:
If the employee is employed on a unit, piecework, commission, or other basis, his gross earnings from the employer for the twenty-six week period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said twenty-six week period and multiplied by the average number of days worked per week; however, if such an employee has worked for the employer for less than a twenty-six week period immediately preceding the accident, his gross earnings from the employer for the period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said period and multiplied by the average number of days worked per week.
La. R.S. 23:102l(13)(d).

. The Lummus court found that the trial court correctly calculated the employee’s weekly wages, but remanded the matter for the trial court to consider tips, finding that her “hours and tips are to be added together to get the average weekly wage.” Id., 97-1140, p. 4, 713 So.2d at 1292.

. Where an employee has a fixed weekly rate of payment, the average weekly wage is “readily ascertainable without resorting to any of the formulas set out in LSA-R.S. 23:1021 [ (13) ]" Morgan v. Equitable Gen. Ins. Co., 383 So.2d 1067, 1070 (La.App. 3 Cir.1980).

. The trial court noted the plaintiff’s 50 hour work week at $1.00 per hour, and the daily meal valued at $1.00, plus $10 a day in tips; however, there is no information as to how many days plaintiff worked and accordingly, the amount attributed to her daily meals and tips is unclear as is the manner by which the trial court arrived at this sum.

.The Federal Internal Revenue Code provides that "the employer of a large food or beverage establishment shall allocate (as tips for purposes of the requirements of this subsection) among employees performing services during any payroll period who customarily receive tip income an amount equal to the excess of — (i) 8 percent of the gross receipts (other than nonallocable receipts) of such establishment for the payroll period over (ii) the aggregate amount reported by such employees to the employer under subsection (a) for such period .." 26 U.S.C.A. § 6053(c)(3(A)). .

. While the Dupont decision does not expressly refer to the IRS code provision noted in footnote (9), the 8% attributed to tips was apparently derived from that provision.

. Mr. Roberts was not called as a witness at trial; however, his report was introduced as an exhibit.

. In their appellate briefs, the parties dispute Mr. Groover's relationship with Blitz Construction. While Appellees argue that Mr. Groover owns this company, Mr. Groover states that "the record is devoid of any evidence whatsoever suggesting that [he] was the owner/alter ego of [it].” Argument of counsel is not evidence. See, State ex rel. Orleans Parish Criminal Dist. Court v. City of New Orleans ex rel. Landrieu, 14-0421, p. 6 (La.App. 4 Cir. 10/1/14), 151 So.3d 714, 718. We find insufficient information in the record with which to make any determination as to Mr. Groover's involvement with this company.